551 So.2d 259 (1989)
I.N. HICKOX, etc., et al.
v.
Ladson STOVER, et al.
87-652.
Supreme Court of Alabama.
July 28, 1989.
Rehearing Denied September 15, 1989.
*260 G. Sage Lyons, J.P. Courtney, III and Charles L. Miller Jr. of Lyons, Pipes & Cook and Robert T. Cunningham, Jr. of Cunningham, Bounds, Yance, Crowder & Brown, Mobile, for appellants.
Fred W. Killion, III and William W. Watts of Reams, Vollmer, Philips, Killion, Brooks, Schell, P.C., Mobile, for appellees, Ins. Art, Inc. and Ladson Stover.
Vincent A. Noletto, Jr. and Thomas H. Nolan, Jr., of Brown, Hudgens, Richardson, Mobile, for appellee, Sosby & Associates, Inc.
PER CURIAM.
This is an appeal from a summary judgment in favor of the defendants, Ladson Stover; Sosby & Associates, Inc. ("Sosby"); and Insurance Art, Inc., in the plaintiffs' action for fraudulent misrepresentation and negligent and wanton failure to procure adequate insurance.[1] At issue in this appeal is whether the claims are barred by the statute of limitations, and whether the plaintiffs presented sufficient evidence to withstand the summary judgment motions. We affirm in part and reverse in part.
The Citronelle Unit Operators' Committee ("Unit"), and the Unit Manager, I.N. Hickox, filed this action on October 31, 1984, after their insurer, the Insurance Company of North America ("INA"), refused to pay the replacement cost of oilfield equipment and inventory that was destroyed by a lightning fire in one of the tank batteries on June 12, 1984. INA paid only one third of the $300,000 loss, because of a co-insurance penalty in the policy. The complaint alleged that the defendants had fraudulently represented, with intent to deceive or with reckless disregard of the facts, that the Unit's coverage under the INA policy was equal to its previous coverage with The Travelers Indemnity Company ("Travelers"). The complaint alleged, in addition, that the defendants had negligently or wantonly failed to procure full, complete, *261 and adequate insurance for the plaintiffs.
In 1982, the chairman of the unit, Bart Chamberlain, ordered a review of the insurance policies carried by the Unit and of the premiums that it was paying. At that time, the Unit insured its oilfield equipment and inventory with Travelers through W.K.P. Wilson and Sons Agency in Mobile, Alabama. A friend of Chamberlain's recommended to him that Ladson Stover, an agent employed by Sosby and by Insurance Art, could provide the Unit with coverage at a lower premium. Chamberlain met with Stover, and then referred Stover to Hickox. There is evidence that Hickox provided Stover with access to the Unit's insurance records, including the Travelers policy, and that Stover reviewed these records.
The Unit produced the following evidence that Stover represented that he could provide insurance identical to the Unit's coverage under its policy with Travelers: On March 16, 1983, Stover sent a telex to Chamberlain's secretary, Peggy Bakewell, stating in pertinent part: "Coverage will be equal to the existing coverage as provided by The Travelers Indemnity Company." On March 17, 1983, Stover wrote to Chamberlain, stating: "This is to confirm our telex to Mrs. Peggy Bakewell, March 16, 1983, that the coverage we are offering through Central National is equal to the coverage provided by your existing carrier, The Travelers."
The Unit decided to buy insurance through Stover, and on March 31, 1983, Stover placed the Unit's coverage with Central National. The new policy went into effect on April 1, 1983, and the Unit's coverage with Travelers ceased that date. On July 20, 1983, the Central National policy was delivered to Hickox by mail. Because of the merger of Central National and INA, the Central National policy was replaced by an INA policy in April 1984. The INA policy continued the same coverage as the Central National policy.
There is evidence that the Central National and INA policies omitted a crucial endorsement found in the Travelers policy. The Unit contends that the Travelers policy contained two distinct endorsements specifying the basis upon which losses would be paid: a "Replacement Coverage Endorsement" and a "Replacement Coverage Agreed Amount Endorsement" ("Agreed Amount Endorsement"). The Central National and INA policies contained only the Replacement Coverage Endorsement, and not the Agreed Amount Endorsement. The absence of the Agreed Amount Endorsement was INA's basis for not paying the Unit full replacement cost for the loss.
The Replacement Coverage Endorsement is the insurer's agreement to cover the replacement cost of the property. This endorsement typically contains a co-insurance provision, which requires the insured to maintain coverage for at least 90% of the replacement cost of the entire property insured. To the extent that coverages falls below 90% of the replacement cost of all the property insured, the insured is a co-insurer of any loss sustained. For example, if the replacement cost of the insured property were $100,000, and the insured maintained Coverage for $45,000, then it would bear half the cost of any loss. The co-insurance clause discourages the insured from undervaluing the property. Without the clause, the insured might purchase less than full coverage, on the assumption that any loss suffered would not be a total loss.
The Travelers, Central National, and INA policies each contained a co-insurance provision in the Replacement Coverage Endorsement. There is evidence that the Travelers policy contained, in addition, an Agreed Amount Endorsement, which provided as follows:
"It is agreed that until [the end of the policy term] or, if this insurance expires prior to said date, until the expiration of this policy, that the amount of $5,166,920.00 stipulated under Item 1 of paragraph E of the Replacement Coverage Endorsement attached to this policy represents 90% of the value of the property covered thereunder for the purposes of the provisions of said endorsement."
This provision stipulates the replacement value of the insured property, and, essentially, *262 negates the effect of the co-insurance provision. If the Travelers policy contained the Agreed Amount Endorsement, then, under that policy, the Unit would not have been a co-insurer of the loss.
On April 4, 1983, Stover sent Hickox a letter advising him that the Central National policy contained a co-insurance provision requiring that the property be insured to 90% of its value. The letter provided in pertinent part:
"I think that you should look at your equipment values as the value of $5,166,922.00 is approximately the same as it has been for the last three years. The policy has a 90% co-insurance provision which means the values are to be 90% of replacement. Please have someone check these values so that there will not be a problem if there is a loss."
There is also evidence that Stover telephoned the Unit to inform it of the co-insurance provision in the policy. Hickox claims that he did not understand the meaning of the letter, and that, therefore, he did not follow up on Stover's suggestion in the letter.
The trial court granted the defendants' summary judgment motions on the fraud claim on the grounds that it was barred by the statute of limitations and that there was not sufficient evidence in support of the claim. The statutory period of limitations for fraud actions, when this action was commenced, was one year. Code 1975, § 6-2-39(a)(5) (now repealed). In addition, Code 1975, § 6-2-3, provided at that time:
"In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his action."
The defendants argue that, under § 6-2-3, we must affirm the summary judgment on the fraud claim, because this Court has interpreted that section to mean that the facts constituting fraud are deemed discovered when they should have been discovered. They contend that, as a matter of law, Hickox should have discovered the absence of the Agreed Amount Endorsement from the Central National policy when he received the April 4, 1983, letter from Stover. Hickox, on the other hand, argues that he did not understand the letter and did not appreciate the significance of the insurance endorsements, and that, therefore, he is excused from failing to discover the difference between the policies until the loss occurred.

A. Statute of Limitations: Fraud Claim

We have held that fraud is discovered as a matter of law for purposes of the statute of limitations when one receives documents that would put one on such notice that the fraud reasonably should be discovered. Nichols v. North American Equitable Life Assurance Co., 502 So.2d 375, 377 (Ala.1987); Retail, Wholesale & Department Store Employees Union, Local 453 v. McGriff, 398 So.2d 249 (Ala. 1981).
Again, the pertinent sequence of events is: INA policy took effect April 1, 1983; policy sent to Hickox during the summer of 1983; loss sustained June 1984; and suit filed October 1984. The defendants argue that the April 4, 1983, letter and the policy itself constituted documents that should have led to the plaintiff's discovery of the fraud as a matter of law. We disagree.
The April 4 letter"I think that you should look" and "have someone check" is too vague to warrant a finding that the plaintiffs' discovery of the fraud was unreasonably late as a matter of law. Nor does the receipt of the policy on July 20, 1983, under these circumstances, warrant a finding that the fraud claim is barred as a matter of law. In Alabama Farm Bur. Mut. Cas. Ins. Co. v. Griffin, 493 So.2d 1379 (Ala.1986), a case involving circumstances similar to those involved in this case, we stated:
"The plaintiffs' evidence indicates they discussed with Mullen the coverage which they wanted, including full coverage on the horse trailer, before he gave them the amount of the premium. The *263 jury could have found that the plaintiffs had the right to rely on his representations. Even if they had obtained a copy of their policy and read it, the question of whether they acted as reasonably prudent people who exercised ordinary care in relying on Mullen's representations would have been a question for the jury."
Id. at 1383. Accordingly, the statute of limitations defense should have been submitted to the jury.

B. Reliance: Fraud Claim

In addition, the summary judgment on the fraud claim is due to be reversed, because the plaintiffs' reliance on the representations made by the defendants was not unjustifiable as a matter of law. This Court has recognized that if a plaintiff has been damaged by misrepresentations in the sale of the policy, then the later receipt of an insurance policy will not prevent those previous misrepresentations from being actionable. Southern Life & Health Ins. Co. v. Smith, 518 So.2d 77 (Ala.1987).
In light of modern society's recognition of a standard of business ethics that demands that factual statements be made carefully and honestly,
"[r]eliance should be assessed by the following standard: A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is `one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth.'" Southern States Ford, Inc. v. Proctor, 541 So.2d 1081, 1091-92 (Ala.1989) (Hornsby, C.J., concurring specially).
In the case at bar, defendants rely on the same two occurrences for their reliance argument that they rely on for their statute of limitations argumentthe April 4 letter and the plaintiffs' receipt of the policy on July 20. Southern Life, supra, makes it clear that the plaintiffs' reliance on the representations made prior to the receipt of the policy was not unjustifiable as a matter of law, and the April 4 letter certainly did not make it clear, as a matter of law, that the representation was "`so patently and obviously false that [the plaintiffs] must have closed [their] eyes to avoid the discovery of the truth.'" Southern States, supra.
Accordingly, the trial court erred in entering the summary judgment based on the element of reliance.

C. Negligence Claim

Also at issue in this appeal is whether the summary judgment on the claim for negligent failure to procure adequate insurance was proper. The trial court disposed of the Unit's negligence claim as follows:
"6. In Count Four of the Unit's complaint, it is alleged that these Defendants negligently failed to provide or procure full and adequate insurance coverage. Where it is alleged that the defendant's negligence resulted in the issuance of a policy that failed to provide adequate and full coverage, the plaintiffs' negligence cause of action accrues when the premium is paid and the policy issued. Langley v. Mutual Fire, Marine & Inland Ins. Co., [512 So.2d 752 (Ala.1987)]; Armstrong v. Life Insurance Company of Virginia, 454 So.2d 1377 (Ala.1984).
"In the present case, the Unit's cause of action for negligence accrued on April 1, 1983, or, at the latest, July of 1983 when the Unit received the Central National policy. The Unit's complaint was not filed until October 31, 1984, more than one year later. Under the statute of limitations for negligence actions, Ala. Code § 6-2-39 (1975), as it existed at the time the Unit's cause of action accrued and the complaint was filed, Count Four of the Unit's complaint is barred by the one year statute of limitations.
"7. Mr. Stover's letter of April 4, 1983, and the receipt of the Central National policy in July of 1983 were enough, as a matter of law, to constitute notice to the Unit that the coverage under the new policy was not the same as under the Travelers policy. The Unit took no action to alleviate the potential problems in *264 coverage under the Central National policy. Since the Unit failed to take reasonable steps to correct the potential problems under the new policy, which the ordinary prudent person would have taken under the circumstances, the negligent conduct of the Unit was a proximate contributing cause of its injury. The Unit was, as a matter of law, contributorily negligent. Count Four of the complaint for negligence must therefore be dismissed as to Defendants, Ladson Stover, Insurance Art, Inc., and Sosby & Associates, Inc."
On appeal, the Unit argues that the summary judgment on this negligence claim should be reversed because, it argues, the claim was timely and the defendants did not prove that, as a matter of law, the plaintiffs were guilty of contributory negligence. We agree, and we reverse the judgment to the extent that it related to the negligence claim.
The court held that the negligent procurement claim accrued in July 1983, when Hickox received the policy, and that the action was time-barred by the one-year statute of limitations when the complaint was filed in October 1984. In support of the rule that the claim accrued upon receipt of the policy, the court cited Langley v. Mutual Fire, Marine & Inland Ins. Co., 512 So.2d 752 (Ala.1987), and Armstrong v. Life Insurance Co. of Virginia, 454 So.2d 1377 (Ala.1984). We overrule Langley and Armstrong to the extent that those cases hold that claims for negligence against an insurance agent for failure to procure adequate insurance accrue as of the date the insurance company provides a policy that fails to meet the plaintiffs' expectations.
In Armstrong, the Court concluded that the alleged legal injury occurred when the insurer provided the unsatisfactory policy. Following the general rule that "[a] negligence cause of action accrues as soon as the plaintiff is entitled to maintain an action, regardless of whether the full amount of damages is apparent at the time of the first legal injury," the Court held that the negligence claim was barred by the statute of limitations. Armstrong relied on Moore v. United States Pipe & Foundry Co., 384 So.2d 1108 (Ala.Civ.App.1980), for the rule that the legal injury occurs upon receipt of the policy. Moore involved a life insurance policy provided by the employer of the plaintiff's husband. The employer let the policy lapse, and the widow sued the employer for negligence. The Court of Civil Appeals held that any injury would have occurred when the policy lapsed, since the plaintiff lost a substantial interest at that time as named beneficiary of the policy proceeds. The action for negligence was held to have accrued when the policy lapsed.
This Court overruled Moore in Weninegar v. S.S. Steele & Co., 477 So.2d 949 (Ala.1985), to the extent that Moore was inconsistent with Weninegar. Weninegar involved a negligence claim against an insurance agent for allowing a flood insurance policy to lapse. We held that no legal injury occurred until the plaintiffs' house was flooded and the insurer refused to cover the loss, and we cited cases from four other jurisdictions in support of this rule. Weninegar, 477 So.2d at 956 (citing Austin v. Fulton Ins. Co., 444 P.2d 536 (Alaska 1968); Wolfswinkel v. Gesink, 180 N.W.2d 452 (Iowa 1970); Spurlin v. Paul Brown Agency, Inc., 80 N.M. 306, 454 P.2d 963 (1969); and Kunz v. Buckeye Union Ins. Co., 1 Ohio St.3d 79, 437 N.E.2d 1194 (1982)).
We find no compelling reason to apply Weninegar in cases of negligent lapse and not in cases of negligent procurement as well. The four cases cited in Weninegar for the rule that the action accrues when the loss occurs, Austin, Wolfswinkel, Spurlin, and Kunz, each involved a claim for negligent procurement, not negligent lapse. These authorities persuade us to overrule Armstrong and Langley to the extent that those cases hold that a negligent procurement action accrues when the policy is delivered. We hold that such an action accrues when the loss occurs. In this case the loss occurred on June 12, 1984, and the Unit filed the action on October 31, 1984. The negligent procurement claim, therefore, was brought within the *265 one-year allowed by the statute of limitations.
The Unit argues on appeal that the question of whether Hickox and, through Hickox, the Unit was contributorily negligent for failing to take some action or to investigate further so as to learn that the Central National and INA policies differed from the Travelers policy in an unfavorable way is a question of fact that precludes summary judgment on the contributory negligence issue. We have held that "[t]he burden of proving contributory negligence and that it proximately caused the injury is on the defendant, and [that] a determination of the existence of contributory negligence is for the jury where there is a scintilla of evidence to the contrary." Hatton v. Chem-Haulers, Inc., 393 So.2d 950, 954 (Ala.1981) (citing Elba Wood Products, Inc. v. Brackin, 356 So.2d 119 (Ala.1978)). We hold that the defendants have failed to carry their burden of proving that, as a matter of law, Hickox and the Unit were guilty of contributory negligence. Hickox presented testimony indicating that he did not understand the letter from Stover or the policy endorsements. Moreover, neither the April 4 letter nor the receipt of the policy, as shown above, triggered a conclusion that the plaintiffs' claim for negligence is barred as matter of law.
Accordingly, the summary judgment on the negligence claim is reversed.

D. Wantonness Claim

The plaintiffs have raised an issue as to the propriety of the summary judgments on the wantonness claim, but they have failed to argue that issue or to cite any authority therefor. Accordingly, we do not address that issue. A.R.App.P. 28(a)(5); see Central Alabama Elec. Coop. v. Tapley, 546 So.2d 371 (Ala.1989). The summary judgment on the wantonness claim is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES and ADAMS, JJ., concur.
JONES, J., concurs in the result.
MADDOX and HOUSTON, JJ., concur in part and dissent in part.
KENNEDY, J., concurs specially in part and dissents in part.
JONES, Justice (concurring in the result).
I concur in the judgment of reversal as to both the fraud claim and the negligence claim. I do not agree, however, with the rationale of the majority in its resolution of the statute of limitations issue as it relates to the fraud claim. The record clearly shows that the claim for fraud was filed well within one year from the date of the loss allegedly caused by the defendants' misrepresentations respecting the coverage afforded by the substituted policy of insurance. Under these facts, the "saving" statute (providing that suit could be brought within one year after discovery of the fraud) is never invoked. The opening clause of the saving statute (§ 6-2-3) prescribes the condition "where the statute has created a bar"; thus, where the statute has not otherwise created a bar, the additional statutory period after discovery need not be resorted to. Indeed, if this were not so, the majority's rationale for commencing the running of the statutory period for the negligence claim would not correspond to the basis for commencing the running of the statutory period applicable to the fraud claim.
Put another way, neither the negligence claim nor the fraud claim could have been brought and maintained before the loss occurred. Proof of damages is no less an element of a claim for fraud than of a claim for negligence. Both causes of action accrued at the same timeon the date of the fire. Section 6-2-3 is invoked only where the statute would have otherwise created a bar, and it operates to extend the statutory limitation for an additional period after discovery of the fraud. Where, as here, the action for fraud was filed within the initial statutory period following the accrual of the cause of action, the claim would not have been barred; thus, the saving statute does not come into play.
Otherwise, I agree with the opinion.
*266 MADDOX, Justice (concurring in part, dissenting in part).
I concur in the majority opinion in all respects except that portion of the opinion that overrules Langley v. Mut. Fire, Marine & Inland Ins. Co., 512 So.2d 752 (Ala.1987), an opinion authored by Mr. Justice Beatty just two years ago and concurred in by Maddox, Jones, Almon, Shores, Adams, Houston, and Steagall, JJ. The majority says, "We find no compelling reason to apply Weninegar only in cases of negligent lapse, and not in cases of negligent procurement as well." The majority wittingly or unwittingly overlooks the fact that Mr. Justice Beatty, in Langley, recognized that a "troublesome statute of limitations issue" was presented in that case. Mr. Justice Beatty was quite aware of this Court's decision in Weninegar and that Weninegar had followed "a line of authority from other jurisdictions," but even in view of that fact, Mr. Justice Beatty meticulously set out the difference between Weninegar, which involved a lapse, and Langley which involved a claim of negligent procurement. Because Mr. Justice Beatty discussed the same legal problems that are presented here, and because his legal reasoning is sound, I merely quote from Langley to show that Mr. Justice Beatty considered each of the legal issues discussed in the majority opinion, and reached a contrary result:
"The issue under these facts is whether Dr. Langley filed this action for fraudulent misrepresentation within one year after he reasonably should have discovered the fraud. See Code of 1975, § 6-2-3. Fraud is deemed to have been discovered at the time of the discovery of facts which would provoke inquiry by a person of ordinary prudence, and which, if followed up, would have led to the discovery of the fraud.
"Under the facts of this case, it is clear that, as a matter of law, Dr. Langley should have discovered the alleged misrepresentation within the year after he received a copy of his St. Paul policy and other documents reflecting the effective date of coverage for that policy. Sharpe v. Crook Realty Co., 508 So.2d 262 (Ala. 1987); Gonzales v. U-J Chevrolet Co., 451 So.2d 244 (Ala.1984); Torres v. State Farm Fire & Casualty Co., 438 So.2d 757 (Ala.1983); Sexton v. Liberty National Life Ins. Co., 405 So.2d 18 (Ala. 1981); Seybold v. Magnolia Land Co., 376 So.2d 1083 (Ala.1979). See also Myers v. Geneva Life Ins. Co., 495 So.2d 532 (Ala.1986)."
As the majority opinion states, there is evidence that the Central National and INA policies omitted a crucial endorsement found in the Travelers policy. In Langley, just two years ago, eight Justices on this Court held that a cause of action for negligent procurement accrued, as a matter of law, when the policy was issued without the coverage promised. This case now holds that an insured need not read the policy of insurance issued to determine the extent of coverage and to determine whether the policy conforms with the understanding of the insured on the extent of coverage, and that the clock does not start running until coverage under the policy is denied. That holding, especially in a case involving an insured and an insurer who have equal bargaining power, is wrong. I believe the law places some responsibility on the insured to look at the policy issued to determine whether it represents the bargain that was struck; consequently, I must dissent.
HOUSTON, Justice (concurring in part and dissenting in part).
I agree that the summary judgment entered on the negligence claim is due to be reversed and that the summary judgment entered on the wantonness claim is due to be affirmed.
However, with regard to the fraud claim, I adhere to the views that I expressed in Southern States Ford, Inc. v. Proctor, 541 So.2d 1081 (Ala.1989), where I wrote specially to address Chief Justice Hornsby's special concurrence, in which he advocated changing the standard by which reliance is assessed in fraud cases. There, I stated that a change in the law was unwarranted but that I would not oppose substituting "justifiable reliance" for "reasonable reliance," with the clear understanding that *267 the concept of reliance enunciated in Torres v. State Farm Fire & Casualty Co., 438 So.2d 757 (Ala.1983), was not thereby overruled. The bench and bar should take note that the majority has today changed the standard by which reliance is assessed in fraud cases, and has thereby implicitly overruled the concept of reliance set forth in Torres.
In my opinion, the plaintiffs' reliance in the present case was unreasonable as a matter of law; therefore, I would hold that the trial court did not err in entering a summary judgment on the fraud claim. I dissent and give my last hurrah against ostrichism.
KENNEDY, Justice (specially concurring in part; dissenting in part).
I concur with the majority as to the issues of negligent procurement and wantonness. However, I respectfully dissent on the issue of fraud.
As stated by the majority of the Court, "We have held that fraud is discovered as a matter of law for the purposes of the statute of limitations when the plaintiff receives documents from which the alleged fraud reasonably should have been discovered. Nichols v. North American Equitable Life Assurance Co., 502 So.2d 375, 377 (Ala.1987); Retail, Wholesale & Department Store Employees Union v. McGriff, 398 So.2d 249 (Ala.1981)." In my opinion, in the Unit's action for fraud, the letter of April 4, 1983, constituted reasonable notice to Hickox that he should inquire further into the nature of the policy. As a matter of law, this letter constituted "facts sufficient to put a prudent person on inquiry, which in the exercise of proper prudence and diligence would have enabled" Hickox to learn of the alleged fraud. Farmers & Merchants Bank v. Home Ins. Co., 514 So.2d 825, 832 (Ala.1987) (quoting Sexton v. Liberty Nat'l Life Ins. Co., 405 So.2d 18, 21 (Ala.1981). Furthermore, receipt of the policy by Hickox in July 1983 also was sufficient notice to the Unit as a matter of law that the coverage under the Central National policy was different from that under the Travelers policy.
The Unit argues that its fraud claim was timely under Jarrard v. Nationwide Mutual Ins. Co., 495 So.2d 584 (Ala.1986), but that case is inapposite here. In Jarrard, Nationwide contended that the one-year limitations period barred the fraud claim because the hospital, more than one year before Jarrard filed the action, had informed Jarrard that Nationwide would pay only a portion of the hospital bill. The evidence revealed that Nationwide continued to represent to Jarrard that it would pay the bill, even after it had decided not to pay. The Court held that the action was timely, because Nationwide's continuing misrepresentations were made within one year of Jarrard's filing the suit. In this case, all of the alleged misrepresentations by Stover were made before the mailing of the April 4, 1983, letter and the Unit's receipt of the policy in July 1983. Because the action was filed over a year after receipt of the letter and the policy, the fraud claim was untimely, and summary judgment for the defendants on this claim should be affirmed.
In addition, the summary judgment on the fraud claim is due to be affirmed because the Unit did not produce sufficient evidence of reasonable reliance. The plaintiff in a fraud action has the burden of proving four elements:
"(1) there must be a false representation; (2) the false representation must concern a material existing fact; (3) the plaintiff must rely upon the false representation; and, (4) the plaintiff must be damaged as a proximate result."
Jarrard v. Nationwide Mut. Ins. Co., 495 So.2d 584, 586 (Ala.1986). The Court discussed the third element, reliance, in Torres v. State Farm Fire & Casualty Co., 438 So.2d 757 (Ala.1983). In Torres, the Court held:
"Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, *268 the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover." 438 So.2d at 758-59.
In this case, the Unit did not meet its burden of producing sufficient evidence that its reliance was reasonable. Hickox's failure to heed Stover's letter of April 4, 1983, and subsequent phone calls, as well as his failure to read the Central National and INA policies, was not reasonable reliance as is required to maintain an action for fraud. This Court has held that reliance upon an earlier misrepresentation is unreasonable as a matter of law where the contract received by the plaintiff would have informed him of the alleged misrepresentation. Syx v. Midfield Volkswagen, Inc., 518 So.2d 94, 97 (Ala.1987); Hinson v. Center Court Productions, 514 So.2d 1374, 1376 (Ala.1987). Under these authorities, the Unit's reliance on Stover's alleged misrepresentations was not reasonable, and the summary judgment on the fraud claim should therefore be affirmed.
NOTES
[1] While there were several motions for summary judgment filed and granted, they were not made final until A.R.Civ.P. 54(b) orders were entered on December 22, 1987, and January 25, 1988. For simplicity we will refer simply to the order of summary judgment.