I must respectfully dissent. Although I concur with the statements of law in the majority's opinion, I cannot agree that the law stated in that opinion requires an affirmance of the summary judgment in this case. The opinion correctly recognizes that Ala. Code 1975, § 27-14-7, does not overrule the principle expressed in Bankers Life Casualty Co. v. Long,345 So.2d 1321 (Ala. 1977), that an insurer may not avoid a policy on the grounds of a misrepresentation by the applicant where the insurer "knows the true facts, or the falsity of the statements, or has sufficient indication that would put a prudent person on notice so as to induce an inquiry which, if done with reasonable thoroughness, would reveal the truth." Id.
at 1323.
The central issue becomes whether the determination that Northwestern had a duty of inquiry or did not have such a duty *Page 817 
should be resolved by the court or by the jury. Here the basic facts are that Duren discussed the advisability of replacing a life insurance policy he had with insurance agent Harry Snitkin when both men were present at a social occasion. On March 25, 1986, a few weeks after that conversation, Snitkin made a presentation to Duren and persuaded him to purchase a more cost effective policy issued by Northwestern. Snitkin understood that the primary purpose for the policy was to provide adequate funds for the payment of the debt secured by a mortgage on Duren's house in the event of his death. Duren further informed Snitkin that once the Northwestern policy was issued, Duren would cease premium payments on his earlier policy.
On the initial application, Duren indicated that he had been hospitalized in May 1985 for pneumonia, and that he was still under medical observation for that condition at the time he made the application, which was 11 months later. That program of observation included chest X-rays performed at various times and a CAT scan performed approximately four months after the initial hospitalization. Duren listed Drs. Wimberley and Dietze as involved in his treatment.
Upon his receipt of the policy, Snitkin notified Duren that the policy was in force from the date of the application, March 25, 1986, but that Snitkin was returning it for an adjustment in the premium to reflect a nonsmoker's rate. When Northwestern failed to respond after about two months, Snitkin contacted Northwestern directly and found that the underwriter who had handled the application was no longer employed at Northwestern and that the policy with the adjusted premium had not been issued. After discussing the situation with Northwestern, Snitkin received the policy with the change in premium in July.
Snitkin stated in his deposition that he had understood that the original policy was being corrected and mailed back. Snitkin also stated that in his subsequent meeting with Duren, Snitkin treated this "new" policy as a correction of the original. Snitkin stated that he and Duren discussed only the change in the premium made to reflect the nonsmoker's rate. Snitkin further stated that he did not review the other paragraphs in the corrected policy with Duren because he understood the corrected policy to address only the change to a nonsmoker's rate and not any other provision.
Snitkin's recollections and testimony with respect to the corrected policy are best reflected in his letter of September 30, 1987, to Northwestern:
 "The policy date of the original policy seems to be the issue here. The new policy date was based on medical information and the original policy date of March 25, 1986. Had the policy been issued correctly upon the request for making the changes and handled properly, we would not be dealing with this problem today. We would be, in fact, dealing with the fact that Mr. Duren died on June 15, 1987 and there would be a need to examine for pre-existing conditions based on an application date of March 25, 1986 and a policy date of March 25, 1986. I'm in a very awkward position in that I brought back a policy with a different date of issue, had an amendment form signed, which I understood had to do with chewing 'nicorette' gum, and it now appears that the Northwestern National is going to deal with that policy date instead of the original policy. I understand now that Mr. Duren did, in fact, see a doctor during that period of time and was advised that he had a change in his health status. Had I known it, at the time, of course, we would have kept the original policy date even with the standard issue instead of the non-smoker. It would definitely have been to his advantage to do so."
These facts support a number of inferences: (1) since Duren was already insured at the time of Snitkin's sales presentation, Duren did not misrepresent any aspect of his health in order to obtain insurance; (2) the information on the initial application supports an inference to a reasonably prudent life insurer that Mr. Duren was suffering from a chronic lung condition; (3) Duren had been a smoker in the past; (4) *Page 818 
investigation of Duren's medical records at the time of the application would have revealed the possibility of cancer but would not have revealed a positive diagnosis to that effect; and (5) both the agent, Snitkin, and Duren treated the corrected policy for a change in premium as being a modification to an extant policy where additional medical information was no longer relevant.
I note that some of these inferences support the plaintiff's argument that any misrepresentations by Duren were innocent. However, I agree with the majority opinion that the innocence of the misrepresentations is not crucial to our analysis. The crucial question is whether the initial application, including the subsequent paramedical examination, revealed enough indications of disease to impose on Northwestern a duty of inquiry. I would hold that the question of whether there were sufficient indications in these disclosures to impose on Northwestern a duty of inquiry is a question of fact, and that the responsibility for answering that question lies with the jury.
Although this Court has not directly addressed the issue of whether summary judgment on an insurer's duty of inquiry is appropriate under similar facts, our law does offer an analogy with respect to the general duty to discover the basis for a cause of action. The law in Alabama has long been that "[t]he question of when a party discovered or should have discovered fraud which would toll the statute of limitations is for the jury." Thompson v. National Health Ins. Co., 549 So.2d 12, 14
(Ala. 1989) (quoting Vandegrift v. Lagrone, 477 So.2d 292, 295
(Ala. 1985)); Hickox v. Stover, 551 So.2d 259 (Ala. 1989). In short, the determination of when one has sufficient indications to impose a duty of inquiry as to the truth of a representation, whether in regard to a fraud action or in regard to an insurance application, is a determination to be made by the jury. Summary judgment would be appropriate in this case only if the plaintiff had failed to present sufficient evidence of facts that would have imposed a duty of inquiry on Northwestern.
In applying our standard for review of a summary judgment, I note that this action was filed after June 11, 1987. Therefore, Ala. Code 1975, § 12-21-12 (1975) mandates that the plaintiff meet her burden of proof by "substantial evidence." Bass v.South-Trust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence test, the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989). More simply stated, "[a]n issue is genuine if reasonable persons could disagree." Schwarzer, Summary JudgmentUnder the Federal Rules: Defining Genuine Issues of MaterialFact, 99 F.R.D. 465, 481 (1982).
I also note that all reasonable doubts concerning the existence of a genuine issue of material fact must be resolved against Northwestern. Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990). Here, the initial application indicates that Duren had had lung problems for at least 11 months prior to the application and that he was still under observation for lung problems at the time of the application. The application also indicates various X-ray tests, a CAT scan, and hospitalization for pneumonia. The subsequent paramedical test indicated at least that Duren was or had been a smoker. Based on the testimony of Duren's doctors, I would conclude that an investigation by Northwestern would have revealed at least a tissue abnormality in the lung and that lung cancer was a possibility.
I would hold that these facts are substantial evidence to support a finding that Northwestern had a duty of inquiry. In light of the disclosure indicating the duration and extent of Duren's lung condition, I would answer "yes" to the question whether reasonable persons might conclude that Northwestern had a duty to further inquire into Duren's lung condition. Accordingly, I would hold that the trial court improperly entered the summary judgment in this *Page 819 
case, reverse that judgment, and remand the cause for further proceedings.
ADAMS, J., concurs.