ALMON, Justice
(dissenting).
I respectfully dissent from the reversal of the summary judgment for the defendants. The release signed by the McGinnises reads “RELEASE OF ALL CLAIMS” at the top of the form in large, bold, capital letters. Just below that, also in large bold print, it says “Read Carefully Before Signing.” Just above the signature lines it says “CAUTION: THIS IS A RELEASE ... READ BEFORE SIGNING.” Underneath each signature line is printed “(I have read the above release of all my claims).” The first paragraph of the release reads:
“For the sole consideration of the payment to us at this time of the sum of Five Thousand Dollars ($ 5,000.00) the receipt of which we hereby acknowledge, do both jointly and severally hereby release, acquit, and forever discharge The Water Works & Sanitary Sewer Board of Montgomery, AL his, her, their or its agents and servants, successors and assigns, heirs, executors and administrators, and all other persons, firms and corporations, of and from any and all actions, causes of action, claims, demands, damages, costs, loss of service, expenses and compensation, which we now have, or may hereafter have, on account of, or arising out of any matter or thing which has happened, developed, or occurred, before the signing of this release, and particularly, but not in limitation of any of the foregoing general terms, because of the accident, casualty, or event, which occurred on or about the 11 day of May 1990, at or near Montgomery, AL.”
The underlined portions are handwritten; the remainder is a printed form. Although the release is perhaps verbose enough to be difficult to read and consists of one long sentence that has no subject, it is not so obscure as to support a holding that the McGinnises, who are high school graduates, could not have understood it. They later received a check that carried, in a box marked “Nature of payment,” the notation “Any and all claims against the Water Works Board of Montgomery.” They indorsed this check and cashed it.
The majority cites Taylor v. Dorough, 547 So.2d 536 (Ala.1989), as supporting a reversal in this case, but I think Taylor presented a significantly different set of facts. In that ease, according to Mrs. Taylor’s testimony, the adjuster actually covered the release language, leaving only the signature lines uncovered. He also explained that the form was one by which the Taylors would give the hospital permission to “release” medical records to the insurance company so that the insurer could pay the claims. He did not give the Taylors a copy of the release. Mrs. Taylor was in pain and on medication; her jaw had been wired shut until the wires were removed earlier in the day. Finally, the adjuster obtained the Taylors’ signature on *475 the release even though he knew they were represented by an attorney.
Here, the McGinnises do not assert that Long covered the language of the release or otherwise prevented them from reading it. They both admit that they saw the language at the top of the paper indicating that it was a “release of all claims.” Although they both deny having read the entire release, they admit that they read portions of it, and they do not contend that Long prevented them from reading it all. They simply assert that he told them that the signatures were “only a formality” and that this payment was only an installment. Such statements, if made, were patently contrary to the bold print on the release. Even under the “justifiable reliance” standard of Hickox v. Stover, 551 So.2d 259 (Ala.1989), the McGinnises should not be allowed to avoid the release, because, to rely on the alleged representations, they “must have closed [their] eyes to avoid the discovery of the truth.” Id., at 263.
MADDOX, J., concurs.