911 So.2d 689 (2004)
ALABAMA FARMERS COOPERATIVE, INC.
v.
PRICEWATERHOUSECOOPERS, LLP.
2020454.
Court of Civil Appeals of Alabama.
March 5, 2004.
Rehearing Denied April 30, 2004.
*690 Andrew P. Campbell and Brandy Murphy Lee of Campbell, Waller & Poer, LLC, Birmingham; Lynn W. Jinks III of Jinks, Daniel & Crow, LLC, Union Springs; and Larry Morris and Randy S. Haynes of Morris Haynes Ingram & Hornsby, Alexander City, for appellant.
Gilbert E. Johnson, Jr., and William D. Jones III of Johnston Barton Proctor & Powell, LLP, Birmingham; and Bingham D. Edwards of Edwards, Mitchell & Reeves, Decatur, for appellee.
PITTMAN, Judge.
This appeal arises from litigation between Alabama Farmers Cooperative, Inc. ("AFC"), a not-for-profit corporation with branches located throughout Alabama, and PricewaterhouseCoopers, LLP ("PWC"), which served as AFC's auditor and financial advisor during the years material to this action. This litigation arose after Bobby Davis, an officer of AFC, engaged in dishonest and unauthorized conduct; specifically, in 1988 Davis signed numerous long-term leases that had not been approved by AFC's board of directors, and those leases eventually caused AFC to suffer millions of dollars in damages.
Originally, Noland Lindsey filed this action, both in his individual capacity and as a shareholder of AFC, against PWC and the individual directors of AFC in the Franklin Circuit Court on October 6, 2000; he asserted claims of accounting malpractice, conspiracy, suppression, fraud, breach of fiduciary duty, and negligent supervision and training. Lindsey specifically contended that PWC, as AFC's auditor, *691 should have discovered and disclosed Davis's misconduct in a company audit.[1] On December 7, 2000, AFC filed a motion to intervene, arguing that it was the real party in interest. See Rule 24, Ala. R. Civ. P. AFC also filed a complaint asserting two claims against PWC, one alleging negligence and one alleging a breach of contract. AFC's motion to intervene was granted.[2] In June 2001, Lindsey and AFC jointly filed an amended complaint alleging claims of negligence, fraud, and negligent supervision. Significantly, that amended complaint did not include a claim alleging breach of contract, even though AFC's motion to intervene had indicated that such a claim would be asserted. Much of the subsequent lengthy procedural history of this action is not material to the issues addressed in this appeal.
In October 2001, the parties filed a joint motion to transfer the case to the Morgan Circuit Court; that motion was granted. Subsequently, extensive written discovery occurred and numerous depositions were taken. In July 2002, AFC filed a motion to set the case for trial, stating that the case would be ready for trial in September; AFC did not attempt to amend its pleadings or to add a breach-of-contract claim at that time. In September 2002, PWC filed a motion for a summary judgment, arguing that all of AFC's tort claims were barred by the applicable statute of limitations. In October 2002, AFC filed a motion for a summary judgment as well as a motion to amend the complaint to add a breach-of-contract claim. That same month, Lindsey was dismissed as a plaintiff, leaving AFC as the sole remaining plaintiff; in November 2002, the trial court dismissed the individual defendants, leaving only PWC as a defendant. Both PWC and AFC filed affidavits opposing the other party's summary-judgment motion in December 2002.
On January 7, 2003, the trial court granted PWC's summary-judgment motion. The trial court also denied AFC's motion for a summary judgment and AFC's motion to amend the complaint to include a breach-of-contract claim. AFC filed a timely notice of appeal to the Alabama Supreme Court. The Alabama Supreme Court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
The action, as finally framed by both parties' pleadings, involved allegations by AFC asserting that PWC had improperly conducted its audits of AFC and had thereby allowed Davis, an officer of AFC, to engage in dishonest and fraudulent conduct in the operation of Dixieland Express, Inc. ("Dixieland"), a division of AFC. AFC asserted claims of negligence, fraud, and negligent supervision against PWC. PWC denied any wrongdoing, specifically denying that any audits had been conducted improperly, and it argued that the two-year statute of limitations, codified at § 62-38(l), Ala.Code 1975, barred any claims by AFC on the basis of negligence, fraud, and negligent supervision.
An order granting a summary judgment is reviewed de novo by an appellate court. See Young v. La Quinta Inns, Inc., 682 So.2d 402 (Ala.1996). An appellate court utilizes the same factors that the trial court used in ruling on a summary-judgment motion. See Ex parte Michelin N. Am., Inc., 795 So.2d 674 (Ala.2001). Rule 56, Ala. R. Civ. P., sets out a two-tiered *692 standard for entering a summary judgment. The trial court must determine (1) that there is no genuine issue as to any material fact, and (2) that the moving party is entitled to a judgment as a matter of law. Ex parte General Motors Corp., 769 So.2d 903, 906 (Ala.1999). Furthermore, to defeat a properly supported motion for a summary judgment, the nonmovant must present "substantial evidence" of his or her claim. Section 12-21-12, Ala.Code 1975. Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In determining whether substantial evidence exists to defeat a summary-judgment motion, a court examines the evidence in a light most favorable to the nonmoving party and resolves all doubts against the movant. Nickolson v. Alabama Trailer Co., 791 So.2d 926, 928 (Ala.2001). Moreover, the law in Alabama is clear that when a defendant makes a prima facie showing that the applicable statute of limitations bars maintenance of a claim, the burden shifts to the plaintiff to prove that the action was brought within the limitations period. See Rivers Mach. Co. v. Barclay Int'l, Inc., 553 So.2d 579 (Ala.1989) (citing Cities Serv. Oil Co. v. Griffin, 357 So.2d 333 (Ala.1978)).
AFC initially argues that its fraud and suppression claims should not be deemed barred by the two-year statute of limitations (see §§ 6-2-3 and 6-2-38(l), Ala.Code 1975) because, AFC says, PWC fraudulently suppressed and concealed its audit work papers for the 1998 audit. AFC correctly states that the question regarding when a plaintiff discovered or should have discovered an alleged fraud is generally a question for the jury. See Liberty Nat'l Life Ins. Co. v. Parker, 703 So.2d 307 (Ala.1997). However, our Supreme Court has recognized that "there are times when this question is removed from the purview of the jury" and can be decided as a matter of law. Kelly v. Connecticut Mut. Life Ins. Co., 628 So.2d 454, 458 (Ala.1993). Generally, once a plaintiff has learned of facts that would put a reasonable person on notice of a fraud, if that plaintiff makes inquiry concerning the alleged fraud and is misinformed by the defendant, so that the plaintiff relies on the misrepresentation, then the statute of limitations is tolled as to the fraud claim. Kelly, 628 So.2d at 459. Moreover, in Foremost Insurance Co. v. Parham, 693 So.2d 409 (Ala.1997), our Supreme Court restored the application of the "reasonable reliance" standard with respect to fraud cases filed after March 14, 1997. Thus, under Alabama law, AFC must show that it "reasonably relied" on PWC's alleged misrepresentations in order for the statute of limitations to be properly deemed to have been tolled.
The record indicates that on September 1, 1998, PWC submitted to AFC its audit for AFC's fiscal year ending May 31, 1998. Moreover, the record also contains a July 1998 report to AFC's chief executive officer from PWC that specifically details a financial investigation undertaken by PWC to determine "the nature and extent of activities undertaken by ... Davis to accelerate revenues and to delay expenses recognition during the fiscal year [that] ended May 31, 1998." Additionally, PWC conducted an investigation to determine whether Davis misappropriated funds from AFC. The report concluded:
"Based on our conversations with Dixieland's leasing companies and truck vendors, we identified no other pending or completed transactions related to the lease or purchase of vehicles of which you [are] not aware."
*693 PWC noted that it did not perform a full audit or evaluation as part of its investigations into Davis's activities and that the investigations had been limited in scope to matters AFC had specifically requested that PWC investigate.
Although AFC vigorously contends that before the spring of 1999, at the earliest, it was not on notice of any fraud allegedly perpetrated by PWC, the record does not support that contention. AFC fired Davis for misconduct in June 1998; PWC had submitted financial audits before 1998 that indicated no financial irregularities. In July 1998, PWC delivered a report to AFC that purported to outline the legality of Davis's activities. AFC argues that the audit submitted on September 1, 1998, and its background papers are the basis for AFC's allegations of fraud and fraudulent suppression. However, a party is deemed as a matter of law to have discovered a fraud upon either (1) the actual discovery of the fraud, or (2) when the party becomes privy to facts that would provoke inquiry in a reasonable person that, if followed up, would lead to the discovery of the fraud, whichever is earlier. Auto-Owners Ins. Co. v. Abston, 822 So.2d 1187, 1195 (Ala.2001). The record clearly reveals that AFC knew of Davis's misconduct no later than June 1998. The fact that PWC's audits before the 1998 audit failed to disclose Davis's misconduct, coupled with the July 1998 PWC report indicating that PWC had not discovered any misconduct other than the misconduct that AFC was already aware of, would have provoked inquiry in a reasonable person to determine whether PWC had committed fraud in connection to Davis's misconduct. AFC offered no substantial evidence that it reasonably relied on any misinformation given by PWC between the time AFC fired Davis in June 1998 and the time AFC intervened in this action in December 2000.
We conclude that AFC did not adduce substantial evidence of fraud or fraudulent suppression committed by PWC such that the statute of limitations would have been tolled in this case. Applying the test set forth in Kelly, we conclude that the trial court properly determined that the statute of limitations barred AFC's fraud and suppression claims.
AFC's negligence claims are based on PWC's alleged breach of a duty to uncover and to disclose Davis's misconduct and mismanagement. All of Davis's wrongful acts were committed before Davis was fired in June 1998. Citing § 6-2-38(l), Ala.Code 1975, PWC correctly contends that the statute of limitations with respect to negligence and fraud claims is two years and that because the action was not filed until October 6, 2000, the action was time-barred.
"It is well settled that a negligence cause of action accrues when the plaintiff can first maintain the action, regardless of whether the full amount of damage is apparent at the time of the first injury." Booker v. United Am. Ins. Co., 700 So.2d 1333, 1339 (Ala.1997). A plaintiff may overcome a statute-of-limitations defense by proving circumstances permitting the tolling of the running of the limitations period, such as fraudulent concealment of wrongdoing on the part of the defendant, see Parsons Steel, Inc. v. Beasley, 522 So.2d 253 (Ala.1988), or estoppel based upon promises made by a defendant in exchange for a plaintiff's agreement to postpone commencement of an action, see Sokol v. Bruno's, Inc., 527 So.2d 1245 (Ala.1988).
AFC cites two cases in support of its contention that its negligence claims are not barred by the statute of limitations: Ex parte Floyd, 796 So.2d 303 (Ala.2001), and Hickox v. Stover, 551 So.2d 259 (Ala. *694 1989).[3] Relying on those cases, AFC argues that it could not have maintained an action against PWC until December 1998, when the full amount of damages was allegedly ascertained. In Floyd, a notary public notarized a fraudulent document that purported to reflect the satisfaction of a mortgage; that fraudulent document was then recorded in the probate court. Believing that title to the property was unencumbered, a third party subsequently took a mortgage covering the property. The initial mortgagee then sued the notary alleging negligence in notarizing the fraudulent document. The Alabama Supreme Court held that the statute of limitations began to run on the date the mortgagee incurred actual damage as a result of the notary's negligent actions; before then, the court held, the mortgagee had not been aware of the cloud on its title and had not incurred any legal injury. Floyd, 796 So.2d at 308. Both Floyd and Hickox (which stands for the same general proposition of law as Floyd) are consistent with the settled law that a negligence cause of action accrues, and the statute of limitations begins to run, when the plaintiff first suffers a legal injury.
In Floyd (and, for that matter, in Hickox), the negligent acts did not cause any injury or damage to the plaintiffs at the time the acts were committed. In this case, however, a legal injury to AFC occurred before Bobby Davis was fired in June 1998 for misappropriating company funds. The record indicates that Davis entered into all of the unauthorized leases between March and April 1998. The record also indicates that AFC had discovered the unauthorized leases by the time Davis was fired. "A legal injury occurs when the plaintiff can first maintain an action." Floyd, 796 So.2d at 308. Therefore, in June 1998, AFC had actual knowledge of a legal injury caused by Davis's misconduct that had previously gone undetected and unreported by PWC. Moreover, AFC's ignorance of PWC's alleged involvement in Davis's misconduct is not a basis for tolling the statute of limitations. See Johnson v. Garlock, 682 So.2d 25 (Ala.1996) (quoting Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979)).
We conclude that the trial court properly entered a summary judgment as to all of AFC's claims against PWC because the applicable limitations periods necessarily began to run when AFC learned of Davis's malfeasance in June 1998 and, thus, AFC's claims were time-barred.[4]
AFFIRMED.
THOMPSON, J., concurs.
MURDOCK, J., concurs in the result, without writing.
YATES, P.J., concurs in part and dissents in part, with writing, which CRAWLEY, J., joins.
YATES, Presiding Judge, concurring in part and dissenting in part.
I concur in the affirmance of the trial court's entry of a summary judgment as to the claims based solely in negligence. I dissent, however, as to the affirmance of *695 the entry of a summary judgment as to the fraud claims.
This action arises out of auditing and accounting services performed by Price-waterhouseCoopers, LLP ("PWC"), for Alabama Farmers Cooperative, Inc. ("AFC"). AFC alleges that PWC improperly conducted its audits, suppressed information, and misstated financial information, thereby allowing Bobby Davis, an employee of AFC, to engage in dishonest conduct without being discovered.
A review of the record provides substantial evidence from which the trier of fact could determine that PWC suppressed or concealed facts that would have delayed a reasonable person's (and, accordingly, AFC's) discovery of PWC's fraud.[5] Generally, the question of when the statute of limitations begins to run is a question of fact for the jury. Barlow v. Liberty Nat'l Life Ins. Co., 708 So.2d 168 (Ala.Civ.App.1997). In a fraud case, a jury question may exist regarding whether the statute of limitations was tolled where the plaintiff's ignorance of the contents of a document that would put a reasonable person on notice of a potential fraud is reasonable under the circumstances. Potter v. First Real Estate Co., 844 So.2d 540, 549 (Ala.2002)(because of the special relationship of trust giving rise to a duty to disclose, a fact question existed as to whether there was a misrepresentation as to the contents of the purchase agreement or whether a trick or artifice was employed at the time of the closing, thus precluding a summary judgment in favor of the real estate agent as to the issue of whether the limitations period was tolled for claims of misrepresentation, fraud, and promissory fraud). A party's knowledge of documents that do not clearly indicate that a fraud has occurred may not trigger the statute of limitations. See Potter, supra.
AFC is a farmer's cooperative. In 1994, AFC decided to expand its services to the trucking industry, and it formed Dixieland Express, Inc. ("Dixieland"). AFC hired Davis to manage Dixieland. From 1994 to 1999, PWC provided accounting services for AFC and Dixieland. In June 1998, AFC terminated Davis's employment after it discovered that Davis had overstated revenue and had understated expenses by accruing accounts receivable and not recording accounts payable in the proper time period. At that time, AFC found that Davis had entered into tractor-trailer leases that had not been authorized by AFC's board of directors. AFC immediately informed PWC of the leases and relied on PWC to determine whether AFC's financial statements were accurate in light of the obligations incurred under the leases. PWC's audit work papers required PWC to examine lease agreements to determine the liability under those agreements and to determine whether the leases should have been capitalized. As late as September 1998, PWC submitted financial audits to AFC that indicated that there were no financial irregularities with regard to the lease expenses. However, in December 1998, Wells Fargo, one of the lessors, sued AFC for defaulting on payments due under the leases. On October 6, 2000, a shareholder of AFC, on behalf of AFC, *696 sued PWC; AFC subsequently intervened in the action, asserting claims that were identical to the claims asserted on its behalf by its shareholder. A trier of fact could determine that the financial statements provided by PWC in September 1998 did not trigger the statute of limitations because a reasonable person would not have discovered PWC's alleged fraud until Wells Fargo brought its suit against AFC. See Ex parte Seabol, 782 So.2d 212 (Ala.2000)(fact question existed regarding whether client's reliance on oral representations of his attorney and his banker regarding validity of the lien against the client's property was reasonable, thus precluding summary judgment on the basis of the statute of limitations as to client's fraud and suppression claims). If there is a genuine issue of material fact, the defendant is not entitled to a summary judgment. Id. Clearly, there was evidence from which a jury could determine that until Wells Fargo filed suit against AFC in December 1998, AFC was not on notice of PWC's alleged fraud.
Although AFC did not raise this issue on appeal, I also believe that it was error for the trial court, in its January 7, 2003, order, to deny AFC's October 31, 2002, motion to amend its complaint by adding a breach-of-contract claim. Rule 15(a), Ala. R. Civ. P., provides that
"a party may amend a pleading without leave of court, but subject to disallowance on the court's own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires."
The facts presented in this case would support either a breach-of-contract claim or a tort claim, see Blumberg v. Touche Ross & Co., 514 So.2d 922 (Ala.1987)(accounting firm's liability may arise in either tort or contract), and, had the trial court permitted AFC to amend its complaint, AFC's contract claim would also have been filed within the applicable statute of limitations period.
CRAWLEY, J., concurs.
NOTES
[1] AFC dismissed PWC and hired another auditing firm to conduct future audits, after PWC completed an audit of AFC for the fiscal year ending on May 31, 1998.
[2] Pursuant to Rule 15(c)(2), Ala. R. Civ. P., AFC's claims related back to the date Lindsey filed his complaint against PWC.
[3] We note that Hickox was overruled in pertinent part by Foremost Insurance Co. v. Parham, 693 So.2d 409 (Ala.1997); therefore, we merely note AFC's reliance upon Hickox without conducting an extensive examination of that case.
[4] Moreover, we note that the facts underlying AFC's claims would appear to support a breach-of-contract claim. While a breach-of-contract claim would have been timely filed under the applicable statute of limitations, the trial court denied AFC's motion to amend its complaint to add such a claim, and AFC did not appeal that denial.
[5] PWC argues on appeal that AFC failed to plead its fraudulent-suppression and fraudulent-concealment claims with particularity. However, PWC did not raise this argument at the trial court level. It is well settled that this court will not consider an issue raised for the first time on appeal. Austin v. Burnett, 473 So.2d 1080 (Ala.Civ.App.1985). Furthermore, PWC did not argue the lack-of-particularity issue in its summary-judgment motion. See Walker v. Norden, 461 So.2d 1312 (Ala.1984)(defendants' summary-judgment motion based solely upon allegations that there were no genuine issues of material fact was insufficient to raise the lack-of-particularity issue regarding a fraud claim).