Plaintiff-Appellee, Fred McGriff, worked for American Bakeries Company, Inc., from December of 1959 until April of 1970, when he was injured during the course of his employment. Thereafter, he was paid workmen's compensation benefits for approximately six years by his employer's workmen's compensation carrier. McGriff remained on American Bakeries' payroll until 1975, receiving one annual vacation pay check for each of the years from 1971 through 1975.
Appellant-Union and American Bakeries Company, Inc., had in effect a pension plan for American Bakeries' employees. Pursuant to the terms of this agreement, a minimum of 15 years "pension credit" was required for an employee to be eligible for a deferred disability pension at age 55.[1] At the time of his injury, Plaintiff had accumulated eight years of "pension credit."
In the early part of 1973, Plaintiff, for the first time, sought information from the union lawyer concerning his eligibility for retirement benefits. By subsequent correspondence dated January 20, 1973, officials of the union's Health and Welfare Fund informed the union lawyer that no payments had been made into the pension fund on Plaintiff's behalf since April of 1970. This information, along with a copy of the letter from the Health and Welfare Fund, was then forwarded to the Plaintiff by the corresponding lawyer in a letter dated January 24, 1973.[2]
In 1975, Plaintiff was informed by a physician that he would never be able to return to work. Plaintiff first filed claim for his pension in June, 1976, alleging breach of contract. This action was thereafter dismissed without prejudice. *Page 251 
In April of 1978, Plaintiff again brought suit, alleging breach of contract in Appellant's failure to award him disability compensation. On December 12, 1979, Plaintiff amended his complaint by adding a count for fraud. Plaintiff's contentions were that he was told by both the plant manager and the union steward he would receive a pension at age 55 if he "stayed on the payroll" for 15 years and joined the union. As a result of these representations, Plaintiff alleged that he accepted employment with American Bakeries and joined the union.
On June 13, 1980, a jury returned a verdict for the Plaintiff and against Appellant-Union for $16,641.50.[3] American Bakeries Company, Inc., originally a defendant, was exonerated from any liability by the same verdict.
Appellant instituted this appeal, claiming, inter alia, that the trial court erred in failing to grant its motion for a directed verdict. Such contention is premised upon grounds that Plaintiff's action is barred by the one-year statute of limitations (Code 1975, § 6-2-3) applicable to actions sounding in fraud.
Our careful review of the record establishes conclusively that Plaintiff's action was commenced beyond the applicable one-year limitations period. Consequently, we reverse.
Despite numerous contentions raised by Appellant for consideration on this appeal, we pretermit discussion thereof save as to the issue of the timeliness of Appellee's claims under the applicable statute of limitations, Code 1975, §6-2-3.
 I. STATUTE OF LIMITATIONS FOR FRAUD Code 1975, § 6-2-3, reads as follows: In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his action. (Emphasis added.)
Facts constituting fraud are deemed discovered when they should have been discovered for the purpose of determining whether an action therefor is barred. Walden v. Walden,268 Ala. 145, 105 So.2d 105 (1958). See, also, Standard Oil Co. v.Johnson, 276 Ala. 578, 165 So.2d 361 (1964).
In January of 1973, Plaintiff received a letter from the union lawyer, Clarence F. Rhea, concerning his inquiries about eligibility for pension payments. Enclosed therein was a copy of a letter received by Mr. Rhea from the administrator of the union's Health and Welfare Fund, which reads in part:
 "In answer to your letter of January 16th I call to [your] attention the current collective bargaining agreement between Flowers Baking Company and the RWDSU Pension and Welfare Fund. This agreement calls for the employer to make contributions on behalf of all employees covered by the agreement, these contributions are to be paid to the Fund on behalf of each employee for time worked. Our records indicate that no payment has been made by Merita Bakery or Flowers Baking Co. for Mr. McGriff since April, 1970."
Mr. Rhea's January 24, 1973, letter to Mr. McGriff, enclosing the letter from the Health and Welfare Fund, reads in part:
 "We have a letter dated January 20, 1973, from the Administrator of the RWDSU Industry, Health and Welfare Fund stating that Flowers Baking Company has made no payments or contributions for you since April, 1970.
. . . . .
 "It may be that the parties did not contemplate this situation when the contract was negotiated. If it was intended by the parties that persons receiving Workmen's Compensation benefits not only continue to be employees but were to be entitled to have employer *Page 252 
contributions made, then this may be a matter that will address itself to the grievance procedure. At all events you probably should talk to your union officials about it."
Our principal inquiry, and one which we answer in the affirmative, is whether these letters constituted notice to Plaintiff that pension benefits to him would not be forthcoming. Stated another way, did Plaintiff first learn of facts, which he now alleges constituted fraud, in January of 1973?
When Plaintiff first learned that Defendant did not intend to perform as represented, the statute began to run. Fugua v.Barbe, 376 So.2d 202 (Ala.Civ.App. 1979), cert. den.376 So.2d 205 (Ala. 1979). Consequently, appellee's cause of action first accrued when he received the letters above set forth, representing Appellant's position vis-a-vis Appellee's right to a pension. From that date, January 24, 1973, Plaintiff had one year within which to file his cause of action bottomed on allegations of fraud by Appellant's officers.
It is important to note that the amendment adding the claim for fraud is not the problem. The "relation back" doctrine under ARCP 15 (c) is fully applicable and would preserve the claim, for statute of limitations purposes, if the original complaint to which the fraud amendment was added were timely filed.
Rather, the problem is two-fold:
1) The correspondence to Mr. McGriff in January, 1973, in clear and unequivocal language, stated the union's position, denying coverage under the pension provision of the collective bargaining agreement. No reasonable contrary inference could be drawn by the fact finder other than the single conclusion that Plaintiff knew, or should have known, that the union did not intend to credit him with any years for pension purposes beyond the eight years during which the employer made contributions on his behalf into the pension fund. Assuming, without deciding, that the union steward's representation, was an erroneous and incomplete description of the pension terms, constituting actionable fraud, we find that its falsity was made known to Plaintiff by way of the January, 1973, correspondence.
2) Plaintiff's complaint, to which the fraud claim was added by amendment, was filed in April, 1978, far beyond the one year after discovery period allowed by § 6-2-3.
Moreover, assuming, as Appellee's counsel insists, that Mr. McGriff's inability to read and write presented a jury question concerning the knowledge of the fraud issue, we are nonetheless bound by the conclusiveness of his own undisputed testimony:
 "Q So, you didn't fill out an application that day, but you did go see somebody and asked about retirement in '75 after Gilbreath told you you couldn't work anymore?
"A Uh-huh.
 "Q Who was that person you talked to? Wasn't it somebody with the Company first?
"A Yeah.
"Q What was his name?
"A I don't know.
"Q Was he in the office up there?
"A Yeah.
 "Q Didn't he tell you to go see the Union about it or something?
"A Yeah.
"Q Did he tell you anything different from that?
"A No.
 "Q In '75, or soon thereafter, you went down and saw J.O., didn't you, J.O. Parker?
"A Yeah.
 "Q Who was, at that time, working for the Union here in Gadsden?
"A Yeah.
 "Q Didn't you tell J.O. Parker at that time you wanted your retirement?
"A Yeah.
"Q And tell us what he said.
"A He said, "You ain't got no retirement."
"Q That was in '75? *Page 253 
"A Yeah."
We have painstakingly reviewed the proof of record; and we find no evidence which would warrant the fact finder to infer that Mr. McGriff first discovered the alleged misrepresentation within the twelve-month period next preceding the filing of the instant suit. Accordingly, the judgment is reversed and the cause is rendered.
REVERSED AND RENDERED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.
[1] Contributions by American Bakeries Co., Inc., were made into the pension fund on behalf of its employees who worked a minimum of 21 hours per week. For an employee to receive a year of "pension credit" necessitated that contributions be made into the fund on his behalf at least 27 weeks in a calendar year.
[2] Relevant portions of both letters are set forth below in the opinion.
[3] The jury's award was solely compensatory in nature. The record is devoid of allegations by either party concerning the issue of punitive damages.