**RAMP OPERATIONS, INC.,**
**Plaintiff-Appellant,**

**v.**

**RELIANCE INSURANCE COMPANY, a corporation, Louisiana Companies, a licensed surplus line insurance broker; et al., Defendants-Appellees.**

**No. 86-7106.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 19, 1986.

W. J. McDaniel, McDaniel, Hall, Parsons, Conerly, Scott, & Lusk, William A. Mudd, Joseph W. Buffington, Birmingham, Ala., for plaintiff-appellant.

Lyman H. Harris, Harris, Evans & Downs, Birmingham, Ala., for defendants-appellees.

John Clark, Jr., Clark & Scott, P.A., Birmingham, Ala., for Louisiana Companies.

Before HILL and HATCHETT, Circuit Judges and THOMAS *, Senior District Judge.

HILL, Circuit Judge:

Plaintiff Ramp Operations, Inc. ("Ramp") appeals from the district court's grant of summary judgment in favor of defendants Reliance Insurance Co. ("Reliance") and Louisiana Companies ("Louisiana"). The district court held that Alabama's one-year statute of limitations barred Ramp's fraud claim in this case. Because we agree with the district court's analysis of the statute of limitations issue, we affirm.

### I.  FACTS

This lawsuit arises out of the theft of four Lincoln automobiles being stored by Ramp at its Birmingham, Alabama facility pursuant to a contract with the Louisville and Nashville Railway Co. (L & N). Two of the stolen cars were almost totally destroyed. Reliance insured Ramp's business operations pursuant to a "garagekeeper's policy," which was in effect from April 1, 1981 through April 1, 1982. Ramp initially reported the claim to Reliance shortly after the theft, but withdrew the claim after L & N decided that it would not claim Ramp to be responsible for the loss. Approximately one year later L & N reasserted its claim against Ramp for the loss, and Ramp refiled the claim with the insurance company. Reliance refused to pay, and Ramp later decided to pay the $38,000 claim itself.

L & N did not assert a claim against Ramp alleging tort liability within the statute of limitations period applicable to property damage claims. Ramp apparently paid L & N lest its refusal to do so might cause L & N to cancel its contract, but Ramp's insurance policy expressly excluded coverage for liabilities assumed by contract. In short, all parties agree that by its terms the insurance policy provided no coverage for this claim; Ramp's allegation is that Reliance and Louisiana had fraudulently misrepresented the extent of the coverage. The district court entered summary judgment in favor of both defendants, holding that the Alabama one-year statute of limitations for misrepresentation or fraud had run, thus barring Ramp's claim.

### II.  DUTY TO READ

Ramp's primary argument on appeal is that the district court erroneously concluded that Ramp should have discovered the alleged fraud at the time it first received the insurance policy. Appellant claims that the district court's rationale is tantamount to imposing a "duty to read," which, according to appellant, Alabama courts have never employed in order to commence the running of the statute of limitations in fraud cases. We find, however, that recent Alabama case law indeed supports such a "duty to read" with respect to the commencement of the statute of limitations for fraud.

The statute of limitations for fraud actions in Alabama is one year. Ala.Code § 6–2–39 (1975). Under Ala.Code § 6–2–3 (1975), a fraud action must be brought within one year of the discovery of the fraud, or within one year of the time when it should have been discovered. *See Gonzales v. U–J Chevrolet Co.*, 451 So.2d 244, 246 (Ala.1984). The clear rule in Alabama is that fraud is "deemed to have been discovered when it ought to have been discovered; that is, at the time of the discovery of facts which would provoke inquiry by a

---

person of ordinary prudence and which, if followed up, would have led to the discovery of the fraud." *Papastefan v. B & L Construction Co.,* 385 So.2d 966, 967 (Ala.1980); *see also Gonzales,* 451 So.2d at 246–47.

Several recent Alabama cases support the district court's "duty to read" rationale for determining when Ramp should have discovered the fraud. In *Torres v. State Farm Fire & Casualty Co.,* 438 So.2d 757 (Ala.1983), the plaintiffs sued their insurance agent and insurance company for the alleged negligent and false representation that the defendants would provide flood insurance. Plaintiffs testified that they relied on the agent with regard to their insurance needs. Mrs. Torres testified that she went to the agent's office in connection with an insurance claim related to Hurricane Frederic and that "the first words out of my mouth when I went in the door were, 'The first thing I want is to tell you that we want flood coverage.'" 438 So.2d at 758. According to Mrs. Torres, one of the employees replied that she would take care of it. Plaintiffs later suffered flood damage and sued State Farm after they were told that they had no flood insurance coverage.

The Alabama Supreme Court affirmed the entry of summary judgment in favor of the insurance company. In language that is equally applicable in the present case, the court stated:

> Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiff should not recover. *Bedwell*

*Lumber Co. v. T & T Corporation,* 386 So.2d 413, 415 (Ala.1980).

> "If the purchaser blindly trusts where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, *'volunti non fit injuria'." Munroe v. Pritchett,* 16 Ala. 785, 789 (1849).

*Torres,* 438 So.2d at 758–59.

The Alabama Supreme Court held that it was unreasonable for the plaintiffs to rely merely on the employee's statement that she would "take care of it." The court considered it important that the plaintiffs received a homeowner's policy each year which did not provide for flood coverage. In addition, in the year and a half that the policy was in effect the plaintiffs never received any premium notice for flood coverage. The court concluded that

> under the circumstances, the plaintiffs failed to exercise ordinary diligence in relying for so long on Ms. Hawkins's statement, when they received nothing from State Farm indicating that flood coverage had gone into effect. The failure to procure flood insurance which would have covered the loss was attributable to the plaintiffs' carelessness and neglect rather than to the misrepresentation.

*Id.* at 759.

In *Gonzales v. U–J Chevrolet Co.,* 451 So.2d 244 (Ala.1984), the plaintiff sued a car dealer for fraud in the sale of an automobile. The plaintiff alleged that the dealer misrepresented the vehicle she purchased as being a new, eight cylinder car, when in fact it was used and had only six cylinders. At the time of the sale, however, the plaintiff signed sales documents which clearly showed that the car was used, and the plaintiff received copies of these documents shortly after the sale. The plaintiff purchased the car in March 1981, but did not file suit until May 1982.

The Alabama Supreme Court affirmed the entry of summary judgment in favor of

the car dealer, holding that the one-year statute of limitations barred the plaintiff's fraud claim. The record showed that the plaintiff read and signed the sales documents on the day she purchased the car and that she had these documents in her possession shortly after the sale. The court concluded that the plaintiff "should have been on notice of any misrepresentations or fraud in the sale of the car *when she received* the documentation for sale." 451 So.2d at 247 (emphasis added). The obvious implication of this holding is that a party is charged with knowledge of the contents of a document at least when that party has received the document and has had ample opportunity to read it.

In *Retail, Wholesale, and Department Store Union v. McGriff,* 398 So.2d 249 (Ala.1981), the Alabama Supreme Court also imposed a "duty to read" on an employee union member with respect to benefits available under a union pension policy. The plaintiff brought suit when he was denied pension benefits after an injury, claiming that the employer and union misrepresented that he would receive certain benefits if he joined the union and stayed with the employer for a certain length of time. The Alabama court held, however, that the one-year statute of limitations barred the plaintiff's fraud claim. The court held that letters sent by the union to the plaintiff in 1973 stating that he would not be eligible for pension benefits should have put the plaintiff on notice of any potential fraud claim. The court concluded that the plaintiff's cause of action "first accrued *when he received* the letters above set forth, representing Appellant's position vis-a-vis Appellee's right to a pension." 398 So.2d at 252 (emphasis added). Again, the Alabama Supreme Court's emphasis on the aggrieved party's *receipt* of a document or documents which would alert that party to a possible fraud claim clearly supports the application of a "duty to read" rationale regarding the commencement of the statute of limitations for fraud.

Thus, in each of these cases, the Alabama Supreme Court held that the statute of limitations for fraud commenced to run at or shortly after the time the aggrieved party received documents which, if read, would have put him on notice of the fraud. This emphasis on the time of receipt clearly implies that Alabama law imposes upon a party the duty to read and inspect any document which might affect that person's legal rights or liabilities. It must be said that the receipt of such a document would "provoke inquiry by a person of ordinary prudence," and that inquiry necessarily would consist of actually reading the document. This obligation is part of the "concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests," as stated in *Torres.* If the facts constituting an alleged fraud claim would be apparent from simply reading a given document, a plaintiff's failure to do so renders his reliance on previous misrepresentations unreasonable in the circumstances.

In the case at bar, Ramp's insurance policy took effect on April 1, 1981, and Ramp received a copy of this policy either before this date or shortly thereafter. Appellant did not file its complaint, however, until February 1984, almost three years later. A representative of Louisiana testified in his deposition that Reliance issued a policy to Ramp containing the same or similar language in 1979, 1980, and 1981. Ramp makes no claim that it could not understand or interpret the policy; it merely relies upon representations which it alleges were made by representatives of the defendants at the time the policy was negotiated. After receiving the policy, however, Ramp had ample time in which it could have and should have read the policy to determine its actual contents. Because Ramp did not do what it reasonably should have done, and consequently did not discover the fraud within one year of when it first should have done so, the district court correctly held that the statute of limitations bars Ramp's fraud claim.

### III. ALLEGED LULLING BY RELIANCE

Ramp asserts that it should not be held to its duty to read the policy in this

case because various acts and representations of Reliance and Louisiana effectively lulled Ramp into inaction. Ramp discusses in detail the negotiations between its vice-president, Dan Duquenne, and Louisiana's agent, Ron Eaton, in an effort to show that the insurance agent intended to provide direct damage coverage to Ramp. The crux of this argument is that Ramp ultimately received a policy providing different coverage than that for which it bargained. This allegation, however, is not relevant to the statute of limitations issue raised by Ramp on this appeal. The only issue with respect to the statute of limitations is the question of when Ramp should have discovered the alleged fraud by the defendants. As we stated above, Ramp should have discovered the fraud at or shortly after the time it received a copy of the insurance policy. Prior negotiations between Ramp and Louisiana therefore have nothing to do with this discovery issue. While the alleged misrepresentations by the defendants may have constituted the alleged fraud, such conduct does not constitute sufficient circumstances to lull Ramp into inaction in discovering the fraud.

██ Ramp also alleges that Reliance's payment of prior theft and vandalism claims was sufficient to lull Ramp into not discovering the fraud. Ramp does not describe in detail the prior similar claims which it asserts were treated as being covered by the policy and were paid by Reliance. As far as we can discern from our reading of the deposition testimony, the only theft and vandalism claims paid by Reliance involved the theft of several items over a two-day period in November of 1980. Lee Emmert, a former Reliance employee, testified in his deposition that Reliance paid two small claims for items stolen from the insured's vehicles in New Orleans and paid another claim for several tires and wheels stolen off the insured's vehicles during this same time. Ramp's vice-president also testified that Reliance paid a claim for the stolen tires and wheels, but he did not mention any other theft and vandalism claims paid by Reliance.

The small payments related to this two-day incident in New Orleans do not constitute sufficient circumstances to lull Ramp into not discovering the actual contents of the policy. Reliance has exhibited no extensive or even significant course of conduct indicating that it regularly approved and paid such damage claims, as alleged by appellant. In addition, there is no evidence in the record that Ramp itself relied on these isolated prior payments in determining the extent of its coverage under the 1981 policy. Without evidence of a significant practice of paying such claims and without any justifiable reliance upon such a practice, Ramp cannot complain of being lulled into not discovering the fraud.

██ To the extent that Reliance did pay previous damage claims made by Ramp, the evidence shows that Reliance was required to do so under Ramp's insurance policy. Part V of the policy required Reliance to pay those damage claims for which Ramp was legally liable. Ramp admits in its brief that it reported each prior theft and vandalism claim within one year of the loss. Thus, the statute of limitations governing an action against Ramp for these losses had not yet run, so at the time Reliance paid these claims Ramp was still exposed to liability. Because Ramp faced potential legal liability for these losses, Part V of the policy applied. Payment by Reliance therefore could not have misled Ramp into assuming the existence of more extended coverage.

██ The claim for the damages to the Lincolns in this case, however, rests on different legal footing. All parties agree that by the time Ramp paid the $38,000 to L & N, the one-year statute of limitations for negligence liability had already run. Thus, Ramp could not have been held legally liable for the damage to the cars except pursuant to its contract with L & N. Ramp clearly paid the claim pursuant to

this potential contractual liability. The "garagekeeper's policy," however, expressly excluded from its coverage liability resulting from any agreement or contract by which Ramp accepted responsibility for the loss.[1] Thus, Reliance's obligation to pay only extended to those losses for which Ramp was legally liable on something other than a contract theory. In this case, unlike the previously paid damage claims, the statute of limitations for negligence had already run. Ramp could no longer have been held legally liable except by contract, and contractual liability was expressly excluded from the scope of the insurance policy. The fact that Reliance properly paid the prior claims pursuant to the legal liability provision of the policy certainly does not constitute sufficient circumstances to lull Ramp into inaction and justify its failure to discover the alleged fraud.

## IV. WHO SHOULD DETERMINE COMMENCEMENT OF STATUTE OF LIMITATIONS

■ Ramp also argues that the question of when the statute of frauds commenced to run is an issue for the trier of fact, and should not be decided by the court on a motion for summary judgment. Ramp cites to two Alabama cases holding that this issue is a question of fact which should be decided by the jury. *See Alabama Farm Bureau Mutual Casualty Insurance Co. v. Griffin*, 493 So.2d 1379 (Ala. 1986); *Wilson v. Draper*, 406 So.2d 429 (Ala.1981).

A proper reading of Alabama law, however, reveals that no such per se rule exists. If the facts regarding the discovery of the fraud are in dispute, it clearly would be up to the jury to determine when the statute of limitations commenced to run. However, "if the facts regarding the discovery issue are uncontroverted and show

that the discovery occurred more than one year prior to the bringing of the suit, summary judgment is proper." *Gonzales v. U–J Chevrolet Co.*, 451 So.2d 244, 247 (Ala. 1984). Moreover, in *Sexton v. Liberty National Life Insurance Co.*, 405 So.2d 18 (Ala.1981), a case cited by Ramp in support of another proposition, the Alabama Supreme Court explicitly stated that "under certain circumstances the time of discovery of fraud can be determined as a matter of law." 405 So.2d at 21.

Thus, Alabama law allows the court to decide the statute of limitations question where the facts regarding the discovery of the fraud are not in dispute. Because we hold that Ramp should have discovered the alleged fraud at or shortly after the time it received the policy, the only facts relevant to the statute of limitations issue are whether and when Ramp received its copy of the insurance policy. These facts are uncontroverted in this case, therefore it was proper for the trial court to determine as a matter of law that the statute of limitations had already run.

AFFIRMED.

---

**1.** This section of the policy provided in pertinent part:

    PART V. GARAGEKEEPER'S INSURANCE

    ....

    C. WE WILL NOT COVER—EXCLUSIONS.

This insurance does not apply to:
1. Liability resulting from any agreement from which the insured accepts responsibility for loss.