**METMOR FINANCIAL, INC., Plaintiff,**

**v.**

**COMMONWEALTH LAND TITLE INSURANCE COMPANY, Defendant.**

Civ. A. No. 93–D–984–E.

United States District Court, M.D. Alabama, Eastern Division.

May 27, 1994.

Lee E. Bains, Jr., Maibeth J. Porter, James R. McKoon, Jr., Phenix City, AL, Clement C. Torbert, Jr., Montgomery, AL, for plaintiff.

James A. Byram, Jr., Montgomery, AL, J. Pelham Ferrell, Phenix City, AL, for defendant.

### MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

This matter is now before the court on defendant Commonwealth Land Title Insurance Company's ("Commonwealth") motion for partial summary judgment, filed on November 4, 1993. Plaintiff Metmor Financial, Inc. ("Metmor"), filed its response on November 29, 1993. Also before the court is Commonwealth's motion to dismiss or stay filed August 27, 1993. Metmor filed its response on September 17, 1993. For the reasons set forth below, the defendant's motion for partial summary judgment and its motion to dismiss or stay are due to be granted. The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

### Facts

The evidence, viewed in a light most favorable to Metmor, suggests the following facts:

The plaintiff is Metmor Financial, Inc., a mortgage company who sells and services home mortgage loans. In 1988, Metmor was issued what is commonly referred to as an "insured closing service letter" by Commonwealth. In this letter, Commonwealth agreed to indemnify Metmor for any losses resulting from the following:

1. The fraud or dishonesty of [Commonwealth's] representative, whether acting alone or collusively, or

2. The failure of [Commonwealth's] representative to comply with [Metmor's] written closing instructions not inconsistent with the provision of [Commonwealth's] binder or commitment issued in connection with [Metmor's] transaction.

[Pl.'s Submission in Opp'n to Def.'s Mot. for Summ.J. at 2]. Metmor accepted Commonwealth's offer and enrolled in its insured closing service.

In early 1989, Terry and Carol Love applied for a mortgage loan with Metmor through Commonwealth's agent James Graham. The Loves sought the loan for a house that they planned to purchase. Because the Veterans Administration (VA) was to guarantee the loan, Metmor required that, as a condition of loan approval, the loan transaction should comply with the Certificate of Reasonable Value (CVR) requirements issued by the VA. In turn, the CVR requirements provided that before the closing of the Loves' loan, there must be evidence that the house was enrolled in an approved ten-year insurance-backed protection plan, i.e. a ten-year warranty. Metmor provided copies of these requirements to James Graham and set a closing date of March 30, 1989, for the Loves' loan.

On the closing date, Joan Herring, a paralegal for James Graham, called Metmor with a question concerning the warranty requirement. Herring spoke with Michelle Clayton, an employee of Metmor. Clayton allegedly told Herring that the property had been enrolled in a warranty program and that Walter K. Underwood[1] would take care of getting the application for enrollment and for paying the fee. When Debra Ann Johnson, Metmor's lead loan closer, learned of Clayton's conversation with Herring, Johnson telephoned Herring and told her not to close the Loves' loan. Later that day, Johnson again called Herring and repeated her demand not to close the loan unless there was evidence of enrollment in a ten-year warranty. In spite of this, Graham closed the Loves' loan.

Shortly after the Loves moved into the home, they began experiencing problems with the home. The problems eventually became overwhelming, and the Loves abandoned the home and stopped making their mortgage payments. In December 1989, Metmor, citing Graham's failure to follow their closing instructions, filed a claim with Commonwealth under the insured closing service agreement and began foreclosure proceedings against the Loves. In a letter dated February 15, 1990, Commonwealth denied Metmor's indemnity claim on the ground that Metmor's agent Michelle Clayton had waived the ten-year warranty requirement during the March 30, 1989 phone conversation with Herring.

On February 14, 1991, the Loves filed suit in state court against Metmor alleging that Metmor had misled them into believing their home was covered by a warranty. Specifically, their complaint alleged that:

> On March 30, 1989, [Metmor] represented to an employee of Mr. Graham that the home had been enrolled with the '2–10 Home Buyers Warranty', that the home was under warranty, that the warranty papers would be sent to the Plaintiffs in the near future, and that the loan closing could take place as planned. These representations were made by an agent, servant or employee of [Metmor], acting within the line and scope of her authority with the Defendants. The agent's name was Michelle Clayton.

[Pl.'s Br. in Opp'n to Def.'s Mot. for Summ.J. at 8].

On December 3, 1991, Metmor filed a third party complaint against Commonwealth alleging breach of contract and bad faith. On April 23, 1993, Metmor filed a motion for leave to amend its third party complaint to add two fraud counts. Though it originally granted Metmor's motion, the court set aside its order after holding a hearing on the matter. In a July 22, 1993 order, the court denied Metmor's motion to amend stating that the amendment to the complaint was untimely filed. On August 11, 1993, Metmor filed the current action with this court. Metmor's complaint is identical to the third party complaint filed in the state court against Commonwealth with the exception that this complaint has alleged the two fraud counts that were disallowed by the state court.

Commonwealth, in response to Metmor's filing of the federal action, filed a motion

---

1. Mr. Underwood is the proprietor of Underwood Construction Company. His company originally owned the home purchased by the Loves.

which sought the court to stay or dismiss the action under the *Colorado River* abstention doctrine. While its motion to stay or dismiss was pending, Commonwealth filed a motion for partial summary judgment as to Metmor's fraud counts alleging that the fraud counts were barred by the statute of limitations. The court will address the summary judgment motion first, before considering the defendant's motion to dismiss or stay.

## I. Fraud Counts

### A. Summary Judgment Standard

 Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In further elaboration on the summary judgment standard, the Court has said that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton,* 883 F.2d 923,

933 (11th Cir.1989). The court is to construe the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

### B. Discussion

In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.

Ala.Code § 6–2–3 (1993). In interpreting this section, the Alabama courts have consistently held that facts constituting fraud are deemed discovered when they should have been discovered. *K & C Dev. Corp. v. AmSouth Bank,* 597 So.2d 671 (Ala.1992); *Gonzales v. U–J Chevrolet Co., Inc.,* 451 So.2d 244 (Ala.1984); *Retail, Wholesale & Dept. Store Employees Union, Local 453 v. McGriff,* 398 So.2d 249 (Ala.1981); *Seybold v. Magnolia Land Co.,* 376 So.2d 1083 (Ala. 1979).

> Fraud is deemed to have been discovered when the person either actually discovered, or when the person ought to or should have discovered, facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered. Further, if the facts regarding the discovery issue are uncontroverted and show that the discovery occurred more than one year [2] prior to the bringing of the suit, summary judgment is proper.

*Tribble v. Provident Life and Acc. Ins. Co.,* 534 So.2d 1096, 1099 (Ala.1988) (citing *Gonzales,* 451 So.2d at 247) (citations omitted).

 When a party discovered or should have discovered the fraud has long been a question for the jury. *Thompson v. Nat'l Health Ins. Co.,* 549 So.2d 12 (Ala.1989); *State Sec. Life Ins. Co. v. Henson,* 288 Ala. 497, 262 So.2d 745 (1972). However, under certain circumstances, the time the fraud was

---

**2.** Effective January 9, 1985, Ala.Code § 6–2–3 was amended to provide for a two year statute of limitations, instead of a one year statute, in fraud actions.

discovered or should have been discovered can be determined as a matter of law. *McLaughlin v. Pannell Kerr Forster*, 504 So.2d 264 (Ala.1987). "In so determining, this Court does not make delphic pronouncements, but has before it either uncontroverted evidence that plaintiffs had such notice, or uncontroverted evidence that a plaintiff, with the ability to read, had in his/her possession a document from which the fraud could have been ascertained by a simple investigation." *McLaughlin*, 504 So.2d at 265 (citations omitted). It is the knowledge of facts which would put a reasonable person on notice of the possible existence of fraud which is sufficient to start the running of the statute of limitations. *Hicks v. Globe Life & Acc. Ins. Co.*, 584 So.2d 458 (Ala.1991). Metmor filed its complaint on August 11, 1993. For the fraud counts to survive summary judgment, Metmor must not have learned of facts that would have put a reasonable person on notice of the possible existence of fraud before August 12, 1991.

### 1. Fraudulent Misrepresentations

■ In the first fraud count, Metmor asserts that Commonwealth made promises to it in the insured closing service letter that Commonwealth never intended to keep, principally, that Commonwealth never intended to indemnify Metmor. Metmor alleges that the fraud was not discovered nor could it have been discovered until January 17, 1992, the day it received a letter from Commonwealth refusing to indemnify Metmor and refusing to defend Metmor against the Loves' action.

Commonwealth argues that the statute of limitations began to run on February 15, 1990, when Commonwealth sent a letter to Metmor advising it that Commonwealth was not responsible for the Loves' transaction. The letter stated:

> You will note from the March 28, 1989, letter from your local office, Ms. Herring had spoken with Michelle Clayton at Met-First [Metmor] on March 30, 1989, and obtained approval to close the transaction because your local office had satisfied themselves that the property was enrolled. Your local office agreed Mr. Underwood

would complete the house and pay the warranty premium at a later date. Therefore, it appears MetFirst satisfied themselves of this aspect of closing and approved same to be acceptable to your company after being notified of this failure to meet your specific closing instructions. **Because your local office was made aware of this unfulfilled requirement of your written closing instructions and apparently consented to waive same, it appears Commonwealth Land Title Insurance Company is not responsible for this matter.** According to Ms. Herring, even though Michelle Clayton no longer works for MetFirst Financial Co., she has been contacted and acknowledged she consented on behalf of MetFirst to go forward with the closing even though the evidence of enrollment in the ten year protection plan had not been obtained.
> **If you have any other evidence or information to provide me, please do so at your earliest convenience. Otherwise, I will close my file in thirty (30) days if I do not hear anything further from you.** In the interim if you have any questions or comments, please contact me at you earliest convenience.

[Pl.Compl., Ex. J] (emphasis added). Commonwealth asserts that this letter clearly shows Commonwealth's intent not to adhere to the agreement.

Metmor argues that this letter has to be taken in the context in which it was presented. Metmor asserts that "when [it] received the February 1990 letter, it had no reason to suspect fraud." [Metmor's Br. in Opp'n to Mot. for Summ.J. at 4]. It was not until Metmor deposed the Loves and Commonwealth's Claims Counsel James Partin and the subsequent letter on January 17, 1992, that Commonwealth's clear intent not to indemnify became known to Metmor.

In *Retail, Wholesale and Department Store Employees Union, Local 453 v. McGriff*, 398 So.2d 249 (Ala.1981), the court reversed a jury verdict for the plaintiff and found, as a matter of law, that the statute of limitations had run on plaintiff's fraud claim. In December 1979, the plaintiff, Fred McGriff, brought a fraud action against the

defendant contending he had been led to believe that he would receive pension benefits if he stayed on the company's payroll for 15 years and joined the union. The court held that plaintiff's fraud count was barred by the statute of limitations because the statute began to run in January 1973, when the plaintiff received a letter from the administrator of the union stating that no contributions to the pension fund had been made by his employer on plaintiff's behalf. The court stated:

> Our principal inquiry, and one which we answer in the affirmative, is whether these letters constituted notice to Plaintiff that pension benefits to him would not be forthcoming. Stated another way, did Plaintiff first learn of facts, which he now alleges constituted fraud, in January of 1973?
>
> When Plaintiff first learned that Defendant did not intend to perform as represented, the statute began to run. Consequently, appellee's cause of action first accrued when he received the letters ... representing Appellant's position *vis-a-vis* Appellee's right to a pension.

*McGriff*, 398 So.2d 249, 252. (citations omitted). Though the facts in the case are distinguishable, the issue and the analysis are the same. Did the February 15, 1990 letter to Metmor from Commonwealth constitute notice to Metmor that indemnification on the claim would not be forthcoming? In other words, did Metmor first learn of the facts, which it now alleges constitute fraud in the February 1990 letter? The court answers these questions in the affirmative. The letter clearly and unequivocally stated Commonwealth's position and the facts that led to that position. The letter invited Metmor to provide Commonwealth with other evidence to the contrary. However, Metmor failed to conduct further inquiry or to conduct its own investigation. "When Plaintiff first learned

that Defendant did not intend to perform as represented, the statute began to run." *Id.* at 252; *Fugua v. Barbe*, 376 So.2d 202 (Ala. Civ.App.), *writ denied* 376 So.2d 205 (Ala. 1979). No reasonable contrary inference could be drawn by the fact finder other than the single conclusion that Metmor knew, or should have known, that Commonwealth did not intend to indemnify Metmor on its claim. The court finds that the evidence is uncontroverted and, as a matter of law, the defendant had "actual knowledge" of facts that showed the defendant's clear intent not to honor the closing service agreement. This letter would have been enough to provoke further inquiry of a person of reasonable prudence. Therefore, the fraud is deemed to have been discovered on February 15, 1990. The fraud count was filed on August 11, 1993. The court finds that the statute of limitations has run on the fraud count and, as a matter of law, the count is barred.

**2. Fraudulent Suppression**

██ Metmor's next fraud count alleges that Commonwealth fraudulently suppressed James Graham's statements to the Loves that Metmor had enrolled the Loves' home in a ten-year warranty and that Metmor would mail it to the Loves. Metmor contends that it did not learn of Commonwealth's concealment until after it deposed the Loves on August 22, 1991, and November 13, 1991. Commonwealth counters by pointing first to the letter of February 1990, which states that Commonwealth's agent was told by a Metmor agent that Metmor "had satisfied themselves that the property was enrolled" in a ten-year warranty. [Pl.Compl., Ex. J]. Further, Commonwealth argues that Metmor's agents knew that the Loves' loan had closed without the warranty and had discussed the possibility of suing Graham for the losses as early as 1989 because Metmor did not think Graham was being truthful.[3] Finally, Com-

---

3. Q: Let's go back to Exhibit 2. This question number three, "Can we go after closer for our losses" and then what did you write next?
A: "Possibly no—if Michelle waived the condition for HOW."
Q: So I take it you mean by that if Michelle told Jimmy Graham's office that it was okay to go ahead with the closing and that the home

was enrolled, then you probably couldn't go against Mr. Graham for any losses?
A: Right.
Q: Then dropping on down, you wrote "Jimmy Graham—copy of warranty—builder submitted monies for warranty. Closing attorney to have warranty. Don't believe closing attorney." Does that mean you thought Mr. Graham was not being truthful?

monwealth points to the Loves' amended complaint against Metmor dated April 23, 1991, that again stated that Metmor had represented to an agent of Mr. Graham that the property had been enrolled in a warranty and that the warranty papers would be sent to them in the near future. Commonwealth contends that all of these incidences clearly puts Metmor on notice of the possibility of fraud and that the statute of limitations should begin to run no later than April 23, 1991, the date of the Loves' amended complaint. The court agrees with Commonwealth.

Plaintiff argues that discovery of a concealed fact differs from discovery of the concealment of that fact. To state it another way, plaintiff argues that even if the court accepts that Metmor knew of Graham's lie, it was not until after the Loves' deposition that Metmor discovered Commonwealth's fraudulent concealment of Graham's lie. Plaintiff cites *McGowan v. Chrysler Corporation*, 631 So.2d 842 (Ala.1993), in support of this proposition. The court agrees with *McGowan* that concealment of a fact differs from discovery of a concealed fact. However, the Loves' deposition did not reveal anything that the plaintiff did not already have knowledge of. The Loves' deposition basically revealed that Graham told the Loves that Metmor had the warranty and would mail it to them. [Metmor's Submission in Opp'n to Mot. for Summ.J. at 6–10]. In the February 1990 letter, Commonwealth revealed to Metmor that Graham had been told that Metmor had "enrolled the property" in a warranty and that it was Commonwealth's belief that Metmor had waived the closing requirement. The February 1990 letter specifically revealed the representations Graham made to the Loves. Even before this letter, the plaintiff had already discussed the possibility that Graham had lied. Thus, between Metmor's knowing there was a possibility that Graham had lied, the February 1990 letter from Commonwealth revealing Graham's representations to the Loves, and the Loves' amended complaint in April 1993, clearly,

enough facts were revealed to Metmor to put a reasonable person of ordinary prudence on notice of possible fraud. These facts should have provoked further inquiry into the matter.

The court finds that the defendant knew or should of known of the facts that constituted the fraud as early as February 1990 and no later than April 23, 1991, the date of the Loves' amended complaint. Metmor did not file this action until August 11, 1993. Therefore, the courts finds, as a matter of law, that this fraud count is also barred by the two year statute of limitations.

## II. The Abstention Doctrine

Commonwealth also seeks to dismiss, or, in the alternative, to stay this action under the abstention doctrine, which is set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Commonwealth argues that when there are parallel state and federal proceedings, in exceptional circumstances, federal courts should dismiss or stay the federal action in favor of pending state actions based upon "considerations of wise judicial administration giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. Metmor asserts that abstention in this case under the *Colorado River* doctrine would be inappropriate.

Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. Given this obligation, a federal court

traditionally abstains from the exercise of its jurisdiction only in three narrow circumstances: (1) when a federal constitutional issue might be mooted or presented in a different posture by a state court determination of pertinent state law [Pullman abstention]; (2) when there are difficult questions of state law bearing on policy problems of substantial public import

A: That's right.
[Br. in Supp. of Commonwealth's Mot. for Summ.J. at 12–13; citing Dep. of Barbara Acker-

man, at 53–54].

**1514**

whose importance transcends the result in the case before the federal court [Burford abstention]; and (3) when, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining criminal proceedings [Younger abstention].

*ALW Marketing Corp. v. Drunasky*, No. 1:91–CV–545RLV, 1991 WL 345313, at *1 (N.D.Ga. April 28, 1992) (citations omitted). Both parties agree that this action does not fall within the parameters of these exceptions.

However, there is a fourth exception. "In *Colorado River* the Supreme Court held that under certain circumstances a federal court action may be dismissed in deference to a parallel state court action in the interest 'of wise judicial administration.'" *Noonan South, Inc. v. Volusia County*, 841 F.2d 380, 381 (11th Cir.1988). The Court cautioned that "a federal court may only dismiss an action because of parallel state court litigation only under 'exceptional' circumstances. Indeed, 'only the clearest of justifications will warrant dismissal.'" *Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 884 (11th Cir.1990) (citations omitted).

However, the Court noted that, even though the circumstances must be exceptional, there are situations that "nevertheless exist" which would warrant abstention. *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246. The Court set forth the following factors in determining the appropriateness of dismissal of a federal action under the "exceptional" circumstances test: (1) whether one of the courts has assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the forums obtained jurisdiction. *Colorado River*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483. The Court later recognized two additional factors: (5) whether federal or state law will be applied; and (6) the adequacy of each forum to protect the parties' rights. *Moses H. Cone Memorial Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

### Discussion

■ In applying these six factors to the present case, the court notes that "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818–819, 96 S.Ct. at 1247.

As this passage makes clear, the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of exercising jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.

*Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937.

■ The first two factors, jurisdiction over the property and inconvenience of the federal forum, are not helpful. The underlying dispute sounds in contract and tort. There is no specific property involved in this case. Thus, whether or not one court has obtained jurisdiction over the property is simply inapplicable as a factor in this case. Second, Phenix City, Alabama, the site of the state court is less than 40 miles away from Opelika, Alabama, the site of the federal forum. Therefore, any inconvenience to the parties is negligible. *See Noonan South*, 841 F.2d at 382. However, the remaining four factors are of significant importance given the facts that were presented.

### 1. Avoidance of Piecemeal Litigation

This case creates a strong potential for piecemeal litigation. The facts underlying both the state and federal claims are the same and the causes of actions in both cases are the same.[4] Both courts would have to make determinations involving the interpre-

---

4. Commonwealth attached to its motion to dismiss or, in the alternative, to stay this action a document which makes a side by side compari-

son between the state and federal action. This document clearly displays that the actions are virtually identical.

tation of the indemnity agreement between the parties. For example, whether or not Commonwealth's failure to comply with Metmor's requirement that a home must be enrolled in a warranty plan constitutes breach of the indemnity agreement in that Commonwealth alleges Metmor waived such a requirement. Other issues that both courts would have to determine include the effects of Metmor's failure to dispute Commonwealth's written report of its investigation of the Loves' claim, and the effects of Metmor's actions or omissions after learning that the loan was not guaranteed by a warranty. "If this Court declines to abstain in this case, and accepts its jurisdictional grant, there exists a strong likelihood that it will duplicate the efforts of the state court and possibly reach different factual—and consequently legal—conclusions on the same exact set of facts." *Allied Machinery Serv., Inc. v. Caterpillar, Inc.*, 841 F.Supp. 406, 408 (S.D.Fla. 1993). The possibility of conflicting results is very great in that both courts are dealing with the same set of facts and the same causes of action. Therefore, the existence of the likelihood of each court reaching different factual and legal conclusions cuts in favor of abstention.

Metmor's only argument is that the cases are not identical since the federal action involves two additional fraud counts. It asserts that since the state court action will not resolve the fraud counts pending in the federal action, this factor cuts in favor of Metmor. The court notes that the state court action did consider the fraud counts. However, the state court refused to address the merits of these claims when it denied Metmor's motion to amend its complaint to add these counts. The state court reasoned that the fraud counts were untimely filed under Alabama Rule of Civil Procedure 15(a) (as amended on August 1, 1992). Nonetheless, Metmor's argument still fails. This court granted Commonwealth's summary judgment as to the fraud counts because they were barred by the statute of limitations. However, with or without the fraud counts, the state and federal courts would have to ad-

dress virtual identical facts and issues making the potential for piecemeal litigation great. Accordingly, this factor weighs heavily in favor of abstention.

### 2. Order in Which the Courts Obtained Jurisdiction

"This factor ... is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. **Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.**" *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 940 (emphasis added). This factor also strongly favors abstention in this case.

Metmor was originally brought into the state court on February 14, 1991, as a defendant in a suit brought by the Loves. On December 3, 1991, Metmor filed a third party complaint against Commonwealth. It is this third party complaint which is identical to the current federal action. The state court's case action summary demonstrates the progression of Metmor's third party complaint. [Materials in Supp. of Def.'s Mot. to Dismiss or Stay, Ex. A]. This document displays the extensive discovery which has been taken, the numerous motions which the state court has considered and ruled upon, and the scheduling dates for trial. The discovery has included some twenty-one depositions and numerous interrogatories. The state court has also granted summary judgment in favor of Commonwealth on Metmor's claim of bad faith, which was appealed by Metmor, and affirmed by the Supreme Court of Alabama. Further, the state court has presided over numerous scheduling conferences and a pretrial conference. In fact, it was only after the state court ruled that Metmor could not amend its complaint to add the fraud counts that Metmor filed this federal action, almost two years after the original filing of its third party complaint.[5]

Metmor contends that "the state court has made very little headway in resolving Met-

---

**5.** Metmor filed the federal action on August 11, 1993. Its third party complaint against Commonwealth was filed in state court on December 3, 1991, a difference of almost twenty-one months.

mor's third-party claims against Commonwealth (as opposed to the underlying claims that the Loves brought against Metmor)." [Metmor's Br. in Opp'n to Mot. to Dismiss or Stay at 9]. Plaintiff asserts that most of the depositions that have been taken refer to the Loves' underlying claims. Metmor argues that only one deposition relating to its third party complaint has been taken and that is the deposition of Commonwealth's agent James Partin. Plaintiff also asserts that many of its discovery requests remain unanswered and its motion to compel discovery remains pending in the state court. Further, Metmor argues that any progress made in the state court would be neutralized by the presence of the fraud claims. *See Am. Mfr. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.,* 743 F.2d 1519 (11th Cir.1984). Plaintiff's arguments are unpersuasive.

First of all, both the Loves' action and the third party complaint are intertwined in that the same facts are involved. Further, it is obvious that the discovery which was taken in the Loves' action is closely related to the third party complaint and would have eventually been needed in that action. It is equally clear that the state court action has progressed much further than the federal action. The state court has already dismissed Metmor's bad faith claim, which was upheld on appeal by the Supreme Court of Alabama. The state court had also set the case for trial on November 9, 1992, but the trial was continued due to the settlement of the Loves' underlying action. In comparison, this court has stayed discovery pending the outcome of this motion. The federal court did set the case for trial, but considering discovery was stayed, it was likely the case would have been continued. Clearly, the state court has made further progress towards resolving the state action. Metmor waited almost two years before filing the federal action and only filed the action after receiving an adverse ruling in the state court. Therefore, the court finds that the fourth factor under the abstention doctrine weighs heavily in favor of Commonwealth.

### 3. Whether State or Federal Law Applies

This fifth factor turns on what law governs the parties' claims. Metmor's claims are for breach of contract, bad faith, and fraud. It is undisputed that all of these claims are governed by Alabama law. Though this factor seems to cut in favor of Commonwealth, it is questionable how much weight it carries. As the Eleventh Circuit pointed out in *Noonan South,* "all federal actions based on diversity jurisdiction are governed by state substantive law. In addition, the claims involved in this case are simple tort and breach of contract claims. This action does not involve complex questions of state law that a state court might be best suited to resolve." *Noonan South,* 841 F.2d at 382. Thus, in deciding whether or not to abstain from this action, this fifth factor is neutral.

### 4. The Adequacy of the Forums to Protect Parties' Rights

Finally, the court must consider the sixth factor which is the adequacy of the respective forums to protect the rights of each party. The plaintiff has questioned the state court's ability to protect its rights based upon two state court rulings which were adverse to Metmor [6]. However, the court finds that both forums are adequate to protect Metmor's rights. The rulings of the state court against Metmor do not raise any doubts in this court as to the adequacy of the state court to protect Metmor's rights. In fact, the court notes that one of the adverse rulings was appealed by Metmor and affirmed by the Supreme Court of Alabama. As to the other ruling, Metmor never asked for reconsideration of the state court's ruling nor did it seek to appeal. Metmor apparently thought the state court was sufficient to protect its interests initially, in that Metmor's third party claim against Commonwealth was pending for almost two years before Metmor filed the current federal action. In fact, it appears that Metmor only filed the federal

---

**6.** The two rulings to which Metmor refers are the state court's granting of summary judgment in favor of Commonwealth on the bad faith count and the denial of Metmor's motion to amend its complaint to add the fraud counts.

action as a response to the state court's denial of its motion to amend.

### III. Conclusion

In balancing the six factors under the *Colorado River* abstention doctrine against the obligation of the court to adjudicate controversies before it, the court finds that there exist "exceptional circumstances" in this case which warrant the court to abstain from this action. The state court action has been pending for twenty months. In that time, extensive discovery has been conducted and the state court has made several dispositive rulings. If the federal court exercised its jurisdiction, discovery would be duplicated and piecemeal litigation may occur. Therefore, based upon "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," the court hereby abstains from hearing this case. *Colorado River*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483.

Accordingly, it is CONSIDERED and ORDERED that defendant Commonwealth's motion for partial summary judgment as to the fraud counts be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that defendant Commonwealth's motion to dismiss or stay be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that this case be and the same is hereby DISMISSED WITHOUT PREJUDICE to the right of any party to move the court to reinstate this action in order to pursue any claim embraced herein **not adjudicated in or discharged by proceedings in the state court action.** Such reinstatement, if and when allowed, will cause the filing date of any claim so reinstated to relate back to the original filing date of this action. Any motion for reinstatement must be filed by a party within 60 days after the state court has taken such action which entitled that party to seek reinstatement.